### In the Matter of ROGER J. AU & SON, INC., Debtor.

#### Bankruptcy No. 683–00986.

United States Bankruptcy Court, N.D. Ohio.

March 30, 1984.

Memorandum of Decision July 11, 1984.

David M. Black, Simpson & Moran, Birmingham, Mich., for movant Michigan Nat. Bank.

Edward C. Baran, Baran & Baran, Mansfield, Ohio, for respondent Baran & Baran.

Jeffrey A. Nelson, Boggs, Boggs & Boggs, Toledo, Ohio, for respondent Boggs, Boggs & Boggs.

Edward Brown, Arter & Hadden, Cleveland, Ohio, for Aetna Cas. & Surety Co.

John Schwemler, Brouse & McDowell, Akron, Ohio, for debtor Roger J. Au & Son, Inc.

Richard A. Princic, Day, Ketterer, Raley, Wright & Rybolt, Canton, Ohio, for respondents, Baran & Baran and Boggs, Boggs & Boggs.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JAMES H. WILLIAMS, Bankruptcy Judge.

On March 19, 1984, the Michigan National Bank of Detroit (MNBD or Bank) filed with this court a Motion to Disqualify Debtor's Counsel, to Deny All Future Compensation and to Require the Disgorgement of Past Compensation. In light of the fact that a potentially lengthy trial on the Bank's motion for relief from stay has been scheduled to begin on April 2, 1984, counsel for the debtor requested that the disqualification motion be heard on an expedited basis. Because of the paramount importance of the issues to be tried on April 2, and because of the gravity of the issues presented in the Bank's motion for disqualification, the court granted the debt-

or's request. A hearing on the matter was convened on March 27, 1984, at which time the parties involved presented evidence and their respective arguments.

## I.

### Statement of the Case

This case was commenced by the debtor, Roger J. Au & Son, Inc. (Au), on July 26, 1983 by the filing at Toledo, Ohio of a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. On August 10, 1983, Au filed its requisite schedules and statement of affairs, which included a statement of the fees already paid and promised to be paid to its attorneys. On that same date, Au filed an application which sought the employment of: Jeffrey A. Nelson, Esq. (Nelson), of Boggs, Boggs & Boggs Co., L.P.A. (Boggs firm); Edward C. Baran, Esq. (Baran), of Baran & Baran Co., L.P.A. (Baran firm); and George A. Howells, Esq., (Howells), of Catri, Howells, Kellam & Owens Co., L.P.A. (Howells firm) as attorneys for the debtor in possession pursuant to Section 327 of the Bankruptcy Code. The court entered an order which authorized the above appointments on August 15, 1983. Thereafter, upon motion for change of venue duly granted, the case and a related one were transferred to this court. Since that time counsel has remained active in these proceedings largely directing their efforts to resisting the pressure being applied by the major secured lender herein, MNBD.

No challenge was brought against the above-named appointees until presentation of the subject motion to disqualify counsel on the grounds that the appointments were contrary to Section 327(a) of the Bankruptcy Code. In particular, MNBD alleges: that counsel were not disinterested as defined in Section 101(13)(A); that counsel represented interests adverse to the interests of the estate; and that counsel had failed to provide a complete and adequate disclosure of prior compensation received thus preventing judicial scrutiny of the same.

## II.

### Factual Findings

The facts, as they pertain to each of the challenged appointments are as follows:

### A.

### The Boggs Firm

The debtor became associated with the Boggs firm in May of 1983 when it retained Nelson to defend certain Admiralty claims filed by MNBD. The association expanded to include Nelson's performance of services for the debtor's principal officer and sole shareholder, Charles H. Au, as well as various related affiliates, among them being Roger J. Au International, Inc. (International).

Nelson testified that any payments he received as counsel to the debtor in the Admiralty actions or as counsel to Mr. Au personally, were routinely drawn on the accounts of International. This practice continued until the filing on July 26, 1983 of the bankruptcy proceedings.

The petition itself, signed by Nelson as the preparer, did not disclose any of the above payments. Instead, the statement of affairs indicated that on May 19, 1983 the Boggs firm received $1,500 from the debtor. On July 26, the filing date, the Boggs firm received according to the statement of affairs, a payment of $15,000—again, purportedly from the debtor. In fact, according to Nelson's testimony herein, both of these payments were made by International as compensation for the Boggs firm's services in the Admiralty actions.

The petition also, pursuant to former Bankruptcy Rule 219(b), disclosed that the Boggs firm had received $3,964 in connection with the bankruptcy filing as a retainer fee. Future compensation in turn, was to be paid by from debtor-in-possession's operations or by Mr. Au personally.

Payments from International continued on a post-petition basis as Nelson testified that in November, 1983 the Boggs firm received two payments totalling $32,551.04.

These payments, which according to Nelson, were compensation for services performed on behalf of Mr. Au personally, were not disclosed in the Boggs firm's first interim fee application filed on March 1, 1984.

## B.

### The Baran Firm

The Baran firm became associated with the debtor in 1975 and soon began to handle the bulk of its legal work. Thereafter, in 1976, Edward Baran was made an officer of Au, serving as corporate secretary. His role in that capacity continues to this day as does his corporate directorship of the company. Baran's secretarial status was disclosed in the debtor's statement of affairs, but no mention of the fact was made in the Baran firm's application for employment filed with the court on August 10, 1983.

Baran also testified that, like the Boggs firm, he and his firm also were paid from accounts in the name of International. Exhibits were received which documented that payments were made from May 16, 1983 through June 22, 1983 totalling $69,179.51. According to Baran, these were compensation for the firm's prosecution of various construction claims on behalf of the debtor beginning in 1978. The funds were advanced by a third party surety which had agreed to underwrite the debtor's potential liability on these projects beginning in 1975. However, Baran admitted to two payments received on the date of the filing totalling $11,824.47 which were not received through the surety.

Notwithstanding the receipt of these funds from whatever the source, the debtor's schedules and statement of affairs failed to disclose any of them. Similarly, the August 10, 1983, employment application contains no reference to the payments. Finally, Baran's first application for interim fee compensation filed on November 1, 1983 is devoid of any reference to the above payments.

## C.

### The Howells Firm

The extent of the relationship between the Howells firm and the debtor is unknown as MNBD offered no evidence with respect to the conduct of this firm and no one appeared on its behalf at the subject hearing. The court is left with MNBD's bare allegations that the Howells firm has received payments from Charles Au personally, or through his related entities, and has failed to disclose any of those payments. In the absence of any tangible evidence upon which it could make its factual findings, the court declines to enter any findings or conclusions in respect to that firm.

In view of the foregoing, MNBD complains that the order of employment of counsel entered on August 15, 1983 is fatally flawed. In particular, MNBD contends that by virtue of the compensation received through International and Mr. Au personally, the Boggs and Howell firms hold interests materially adverse to the estate. Next, the Bank alleges that because of Baran's status as a corporate officer and director, neither he nor his firm can be considered as disinterested as mandated by Section 327(a) of the Bankruptcy Code. Finally, with respect to all counsel, the Bank avers that their failure fully to disclose any third party payments and/or their insider associations with the debtor, constitute a breach of the disclosure requirements of Section 329 of the Code and those found in Bankruptcy Rules 2014 and 2016.

## III.

### Conclusions of Law

■ 1. The statutory provisions in issue are fairly concise:

*11 U.S.C. § 327(a):* Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys * * * that do not hold or represent an *interest adverse* to the estate, and that are *disinterested* persons, to represent or assist the trustee in

carrying out the trustee's duties under this title. (Emphasis added)

A "disinterested person" is a defined term in Section 101 of the Bankruptcy Code:

(13) "Disinterested person" means person that—

(A) is not a creditor, equity security holder, or an *insider;*

\* \* \* \* \* \*

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor \* \* \*;

Baran's role as an officer and director of the debtor corporation destroys his "disinterested" status, a plain requirement for his employment as an attorney for the debtor in possession. His testimony that his role was uncompensated, largely "ceremonial" and undertaken as a "convenience" to facilitate the signing of documents and the recordation of corporate minutes is irrelevant as, even if totally correct as descriptive of his duties in those capacities, there is no latitude provided in the Bankruptcy Code for such activities. Moreover, the statement of affairs reveals that the debtor is a very tightly held and controlled corporation with only Baran, apart from family members, holding an office. It is simply impossible for him to divorce himself from the role of an insider, itself a defined term in 11 U.S.C. § 101(13) as being antithetical to the quality of disinterestedness.

■ 2. Nelson's infirmity, and hence that of his law firm, is found in his testimony that prior to the filing of the petition for relief in the bankruptcy court, he performed various services on behalf of the principal officer and the sole shareholder of the debtor corporation, Charles H. Au. Although no direct evidence was offered, allegations that Mr. Au and a related corporation, Roger J. Au International, Inc., also represented in the past by Nelson, are themselves substantial debtors of the corporation before the court, were met with silence. The court views Nelson's required disinterestedness as compromised by these past relationships. *See, In re Chou-Chen*

*Chemicals, Inc.,* 31 B.R. 842, 10 B.C.D. 1103, 8 C.B.C.2d 1240 (Bankr.W.D.Ky. 1983).

3. Neither is Nelson's right to serve as counsel for the debtor herein saved by 11 U.S.C. § 1107(b):

(b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

Congress appears very clearly and emphatically to have limited its exception for prior representation to that engaged in on behalf of the *debtor.* It is not a blanket exception to the requirements of Section 327(a). *See, In re Leisure Dynamics,* 32 B.R. 753, 9 C.B.C.2d 265 (Bankr.D.Minn. 1983).

■ 4. The Bankruptcy Code goes no farther than to provide in Section 328, that the court "may deny allowance of compensation for services and reimbursement of expenses" in the event of disinterestedness or if an applicant for compensation proves to be the holder of "an interest adverse to the interest of the estate \* \* \*." Such a solution is imperfect at best and absurd at worst. Simply to advise counsel that the court perceives their status as such as to deny them compensation if and when requested does nothing to advance the public image of a judicial system that demands the very strictest adherence to the laws and codes of professional responsibility. It is within the power of a federal court to disqualify attorneys in litigation before it, *United States v. Bishop,* 90 F.2d 65 (6th Cir.1937) and, while disqualification is not a legislatively imposed sanction, this court, as one of equity, (*Bank of Marin vs. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966)), certainly has the power to so act. *In re Leisure Dynamics, supra.*

## MEMORANDUM OF DECISION

Before the court is a motion for alteration of judgment or for a new trial on the

issue of disqualification of the law firms of Baran and Baran Co. L.P.A. (Baran Firm) and Boggs, Boggs & Boggs Co. L.P.A. (Boggs Firm). The motion was filed by the debtor in possession (Au & Son) in response to the court's order of March 30, 1984, which disqualified the law firms from further representing the debtor in possession in these Chapter 11 proceedings. After conducting a hearing the court took the matter under advisement to consider the crucial issues raised by the arguments of counsel for the Baran and Boggs firms.

## I

At the outset, the court disavows, for the purposes of this discussion, any perceived concern over financial arrangements among the debtor in possession, its subsidiary Au International, Inc. and Charles H. Au, the sole shareholder of the debtor in possession. Neither is the court concerned, for these purposes, with certain pre-petition payments by Au International, Inc. to the Baran and Boggs firms. More immediate, compelling considerations, as defined below, must be confronted.

## II

### A

Edward C. Baran of the Baran firm has served as legal counsel for Au & Son since 1975. In addition to serving as counsel for Au & Son, he has also served as counsel to the various affiliated corporations which are primarily under the corporate umbrella of Mr. Charles H. Au, president and sole shareholder of Au & Son. Although Mr. Baran is not a stockholder in Au & Son or any of its affiliated corporations, he has served either as secretary or assistant secretary for these companies. Since 1976, Mr. Baran has served as secretary and director for Au & Son, the debtor in possession and continues to serve in these capacities.

Mr. Baran's duties as secretary and director for Au & Son are largely ceremonial or clerical, for the most part, confined to keeping proper minutes at the board meetings and other minor functions. He apparently plays no part in formulating corporate strategy nor is he consulted with respect to decision-making on purely business matters.

On July 26, 1983, Au & Son filed a Chapter 11 petition in the bankruptcy court at Toledo, Ohio. Mr. Baran was then chosen to serve as co-counsel in the Chapter 11 reorganization with Jeffrey A. Nelson of the Boggs firm. Accordingly, their joint application to the court for employment as counsel stated in part as follows:

> In further support of said application, applicant represents that said attorneys do not represent or hold any interests adverse to that of the estate or the debtor in possession and that the employment of said attorneys is in the best interest of the estate.

In the application to retain counsel, Mr. Baran did not reveal that he was either a director or secretary of Au & Son. Bankruptcy Judge Richard L. Speer of the bankruptcy court at Toledo approved the application. Soon thereafter, venue of the case was transferred from Toledo to this court at Canton, Ohio.

### B

The Boggs firm has been involved with this case primarily through the efforts of Jeffrey A. Nelson. Mr. Nelson, as stated above, was retained by Au & Son, and has served as co-counsel with Mr. Baran from the date the petition was filed to the date of his disqualification by the court. During the course of the Chapter 11 proceeding, Mr. Nelson has also provided various legal services for Charles H. Au and members of the Au family personally. The nature of the personal representation consisted of representing Charles H. Au in a lawsuit against Michigan National Bank of Detroit (MNBD) and its vice president, and Mr. Nelson performed legal services relating to the potential liability of Charles H. Au arising from Mr. Au's personal guarantee of various loans obtained by the debtor from MNBD. For these personal services, Mr. Nelson received payment from Charles

H. Au in the amount of $32,551.04, consisting of a payment of $25,000.00 on November 2, 1983, and a payment of $7,551.04 on January 17, 1984. For services connected with the Chapter 11 proceedings, Mr. Nelson has filed a request for interim compensation which seeks legal fees in the amount of $31,252.50.

### C

A great part of the services performed on behalf of the debtor in possession by Mr. Baran and Mr. Nelson has consisted of litigating the issues raised by a motion for relief from stay filed by MNBD. MNBD is the major secured creditor of the debtor in possession, and the relief from stay litigation has dominated all aspects of this proceeding since the motion was filed on August 3, 1983. This litigation has spawned bitter personal battles and other instances of divisiveness among the parties which has resulted in much delay and interruption. The hostility which exists between MNBD and those associated with the debtor in possession began long before the bankruptcy proceedings commenced.

In spite of the differences among the parties, the relief from stay litigation progressed through the discovery stage and was finally set for trial on April 2, 1984. By that time, however, counsel for MNBD had filed a motion requesting that the court disqualify Mr. Baran and Mr. Nelson and their firms on the grounds that neither met the standards of 11 U.S.C. § 327, which requires counsel for the debtor to be both disinterested and not representing interests adverse to the estate. MNBD's disqualification motion was filed on March 19, 1984.

Pursuant to a request by the debtor in possession, an expedited hearing was held on March 27, 1984. On March 30, 1984, the court entered its Findings of Fact, Conclusions of Law, and an Order which disqualified Mr. Baran and his firm and Mr. Nelson and the Boggs firm from further representing the debtor in possession in these proceedings. It is that decision from which this motion to reconsider emanates.

### III

As movant's brief correctly points out, there are important issues of policy involved in this proceeding which have potentially far reaching implications for attorneys representing corporations, whether undergoing reorganization under Chapter 11, or in general. Addressing these issues is not an easy task for the court must go beyond mechanically applying the words of the Bankruptcy Code alone.

### A

The appropriate starting point in this inquiry is Bankruptcy Code[1] section 327(a) which states as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys ... *that do not hold or represent an interest adverse to the estate, and that are disinterested persons*, to represent or assist the trustee in carrying out the trustee's duties under this title. (Emphasis added).

The elements of section 327(a) are not new. Rather, language similar to that in section 327(a) is found in the former Rules of Bankruptcy Procedure promulgated to implement the provisions of the Bankruptcy Act of 1898.[2] Former Bankruptcy Rule 10–206(a), which specifically applied in Chapter X reorganization proceedings,[3] provided in part as follows:

**1.** The Bankruptcy Code is the product of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 stat. 2549 (principally codified at 11 U.S.C. and hereinafter referred to as the "Bankruptcy Code" or the "Code").

**2.** Bankruptcy Act of 1898, ch. 541, 30 stat. 544 *amended by* Bankruptcy Act of 1938, ch. 575, 52 stat. 840 (hereinafter referred to as the "Bankruptcy Act" or the "Act").

**3.** The Bankruptcy Act contained three separate chapters dealing with reorganization or restructuring of debts. Chapter X governed corporate reorganizations. Bankruptcy Act sections 101–276, 11 U.S.C. §§ 501–676 (1976) (repealed 1978). Chapter XI governed arrangements be-

[A]n attorney appointed to represent a trustee shall be *disinterested* as specified in Rule 10–202(c)(2). (Emphasis added).

The drafters of Chapter X apparently had valid reasons for requiring the attorney for the trustee to be disinterested. When Chapter X was being drafted in the 1930's to replace the old federal equity receivership system, the staff of the Securities and Exchange Commission, under the leadership of William O. Douglas, played a significant role in establishing the tenor and philosophical approach to corporate reorganizations under Chapter X. Dodd, *The Securities and Exchange Commission's Reform Program for Bankruptcy Reorganizations*, 38 Colum.L.Rev. 223 (1938). The SEC staff was particularly concerned with and critical of the part which management and its investment bankers played under the federal equity receivership system. The criticism of these groups arose from the thinking of the SEC staff that management and its bankers, in formulating a plan of reorganization and in overseeing the reorganization generally, had, on occasion, favored insiders to the detriment of creditors and other interested parties.

The record of corporate reorganizations of the past and particularly those of the recent depression is not pleasant. It shows the absolute control exercised over reorganizations by the inside few ... The record also shows, with overwhelming proof, that plans of reorganization were frequently dictated by a single interest—by a closely knit inside group; primarily in the interests of that group ... These conclusions indicate that something must be done to provide impartial, capable control over reorganizations....

H.R.Rep. No. 1409, 75th Cong., 1st Sess. 37–38 (1937) (Statement of SEC Commissioner William O. Douglas at hearings on

tween a debtor and unsecured creditors. Bankruptcy Act sections 301–99, 11 U.S.C. §§ 701–99 (1976) (repealed 1978). Chapter XII governed real property arrangement of certain noncorporate persons. Bankruptcy Act sections 401–526,

H.R. 8046 (the bill enacting Chapter X into law)).

Often under the old equity receivership the receiver appointed to oversee the reorganization was a former officer of the debtor, whom the SEC staff viewed as "friendly" towards the interests of the corporation's insiders and was thus reluctant to investigate the corporation's financial affairs.

To remedy these defects, Chapter X relieved management of all major responsibilities in formulating a plan of reorganization and of running the day to day operations of the debtor's business. The debtor's management was mandatorily replaced by a "disinterested" trustee who could, at his option, retain counsel to advise him regarding the various legal aspects of reorganizing the corporation. Bankruptcy Act sections 156–57, 11 U.S.C. §§ 556–57 (1976) (repealed 1978). This process shifted the decisionmaking from management to the trustee, who was thereafter charged with the responsibility of investigating management wrongdoing, overseeing current operations, and formulating a plan that was fair to all interested parties. As stated by Commissioner Douglas, "the independent trustee is the key to real reform. In comparison, the other reforms are secondary." House Hearings on H.R. 6439, 75th Cong. 1st Sess. 177 (1937).

An important component of this new structure required that the attorney appointed to aid the trustee must, like the trustee, be disinterested. Former Bankruptcy Rule 10–206(a). As one commentator stated, "This, of course, is quite sensible, for it would be anomalous indeed to require a trustee to be aloof from all connection with the debtor or its management, yet permit the trustee's attorney, who would necessarily be active in furthering the trustee's duties of investigation, management, prosecution, development of plans and the like, to have a close relation-

11 U.S.C. §§ 801–926 (1976) (repealed 1978). Because Chapter 11 of the Bankruptcy Code is derived from Chapters X and XI of the Act, Chapter XII will not be considered in this analysis.

ship with the debtor, its management, or associates." 6 *Collier on Bankruptcy*, para. 7.06 at pp. 1203–04 (14th ed. 1978). Thus, to insure that the trustee's attorney had no connection with the debtor or its management, the former Bankruptcy Rules defined a disinterested person as one who is not a creditor or stockholder of the debtor; an underwriter of the debtor's securities; a director, officer, employee or attorney of the debtor or underwriter; any person with a direct or indirect relationship to or connection with the debtor or underwriter or possessed of any interest materially adverse to interests of any class of creditors or stockholders. Former Bankruptcy Rule 10–202(c)(2)(A)–(D). These definitions guided the courts in their appointments of counsel and insured that the conduct of the Chapter X cases proceeded in the way that the drafters of Chapter X intended. Under this structure, the influence of corporate insiders was severely limited because the rules were applied very strictly. *See Meredith v. Thralls*, 144 F.2d 473, 475 (2d Cir. 1944) ([Rule 10–202(c)(2)] must be construed in a manner "consistent with the congressional intent to do away with 'friendly trustees'.")

The same rules did not apply, however, in corporate reorganizations under Chapter XI of the Bankruptcy Act. *See* former Bankruptcy Rule 11–18(b). The drafters of Chapter XI perceived that cases thereunder would generally involve small or medium sized debtors, whose situations might not require the appointment of trustees to operate their businesses.[4] Ideally, the debtor remained in possession on the theory that creditors were better served by a continuing relationship between management and its customers. Thus, under these arrangements, there was no real need or benefit,

as under Chapter X, in having an independent trustee appointed and, accordingly, counsel for the debtor in possession was not required to be disinterested. *See* 14 *Collier, supra*, Ch. 11–22; 6 *Collier, supra*, para. 7.07. These features distinguished Chapter XI from Chapter X, and demonstrate that the Chapter XI drafters were not overly concerned that the potential for unfairness or abuse, as existed in Chapter X, would surface in Chapter XI cases.

## B

Under the Bankruptcy Reform Act of 1978, one of the goals of the drafters of the new Bankruptcy Code was to incorporate the best features of both Chapter X and Chapter XI into the new Chapter 11, which is now the exclusive vehicle for corporate reorganizations. *See* Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, pt. 1, 93d Cong., 1st Sess. 237–59 (1973). Under Chapter 11 of the Bankruptcy Code, like Chapter XI of the Bankruptcy Act, the debtor is ordinarily left in possession,[5] but in the amalgamation of the two former reorganization/rehabilitation chapters, the Chapter 11 debtor in possession is not so unfettered as was his Chapter XI precursor. The statutory provision governing this concept is 11 U.S.C. § 1107(a) which provides as follows:

> *Subject to any limitations on a trustee* under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties except, the duties specified in section 1106(a)(2), (3), and (4) of this title, of a

---

4. In small Chapter X cases, where the debtor's liquidated, non-contingent liabilities were less than $250,000.00, a trustee was not required to be appointed. Bankruptcy Act section 156, 11 U.S.C. § 556 (1976) (repealed 1978). However, Chapter X reorganizations with liabilities in amounts this small were very rare. *See* Coogan, *Confirmation of a Plan Under the Bankruptcy Code*, 32 Case W.Res.L.Rev. 301, 318 & n. 93. (1982).

5. A trustee may be appointed at the request of a "party in interest" where there has been evidence of fraud or incompetence or where such appointment is "in the interests of creditors or equity holders." 11 U.S.C. § 1104(a). In some instances, an examiner may be appointed to investigate the financial affairs of a debtor in possession. 11 U.S.C. § 1106.

trustee serving in a case under this chapter. (Emphasis added)

The manner in which this Code section operates is cogently stated by the legislative history:

This section places a debtor in possession in the shoes of a trustee in every way. The debtor is given the rights and powers of a Chapter 11 trustee. He is required to perform the functions and duties of a Chapter 11 trustee (except the investigative duties). He is also subject to any limitations as a Chapter 11 trustee....

S.Rep. No. 989, 95th Cong., 2d Sess. 116 (1978); *see also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 404 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5902, 6360.[6] One such limitation is that an attorney hired to represent the debtor in possession must be disinterested as required by section 327(a). *In re Leisure Dynamics, Inc.,* 33 B.R. 121, 11 B.C.D. 1116, 1117 (D.Minn. 1983), *aff'g* 32 B.R. 753, 9 C.B.C.2d 265 (Bankr.D.Minn.1983); 2 *Collier on Bankruptcy* para. 327.03 [3][a] at p. 11 (15th ed. 1984), *see also* 11 U.S.C. § 103(a) ("Except as provided in section 1161 of this title, chapters 1, 3 and 5 of this title apply in a case under chapter 7, 11 or 13 of this title."). Thus, as contrasted with Chapter XI of the Act, Chapter 11 requires the debtor in possession to limit appointments of attorneys to those who are disinterested.

It is apparent from the structure of Chapter 11 that some of the fears and concerns which motivated the Chapter X drafters were of less concern to the framers of the new legislation. Therefore, like Chapter XI, it was believed that all parties in interest are better served on the whole when the debtor remains in possession with management remaining in place. Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, pt. 1, 93d Cong., 1st Sess. 253 (1973). Moreover, Chapter 11 does not require the debtor in possession to perform the investigating duties incumbent upon the Chapter X trustee.[7] *See* 11 U.S.C. § 1107(a). Given this demonstration of selectivity of various features of past legislation from which they drew, it is quite significant that the drafters of Chapter 11 retained the requirement that the debtor in possession may only appoint counsel who is disinterested. 2 *Collier on Bankruptcy* para. 327.03[3][a] (15th ed. 1984) at p. 12.

The Bankruptcy Code defines categories of disinterested persons and a person is not disinterested if he or she is any of the following: 1) a creditor, equity security holder, or an insider; 2) an investment banker for any outstanding security of the debtor; 3) one who is not or has not within three years before the date of the filing of the petition been an investment banker or an attorney for an investment banker in connection with the offer, sale, or issuance of a security of the debtor; 4) one who is not or was not within two years before the date of the filing of the petition a director, officer, or employee of the debtor or of the debtor's investment banker; 5) not holding an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or its investment banker. 11 U.S.C. § 101(13)(A)–(E). These definitions, applicable to section 327(a), are obviously drawn heavily from the definitions contained in former Rule 10–202 paraphrased above. H.R.Rep. No. 595, 95th Cong. 1st Sess. 310 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 23 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787.

C

The fact that these requirements of disinterestedness have passed from practice under the Act to the Code demonstrates that the policies emanating from them have

**6.** *See* Bankruptcy Rule 9001(10) ("the following words and phrases used in these rules have the meanings indicated: 'Trustee' includes a debtor in possession in a Chapter 11 case").

**7.** The duties of the debtor in possession are codified at 11 U.S.C. §§ 544–49, 1106(a)(1), (a)(5)–(a)(7).

withstood the test of time. Their durability can be accounted for, primarily, by the fact that they are both logical and prudent. Thus, the merger of the requirements of former Rules 10–202 and 10–206 into Code sections 327(a) and 101(13) must be interpreted as deliberate and well considered action by the draftsmen to insure that attorneys practicing before the bankruptcy courts would be serving the best interests of the estate, free from conflicting entanglements with various interested parties.

## IV

### A

In the court's previous decision in this matter disqualifying the Baran firm, the grounds for the disqualification were based upon "Baran's role as an officer and director of the debtor corporation" which "destroys his 'disinterested' status, a plain requirement for his employment as an attorney for the debtor in possession." Movant's brief describes the court's holding in this regard as an "extremely narrow reading of the Bankruptcy Code ... contrary to the intent and purpose of the Code and also contrary to the interpretation given to the Code by other courts." (Movant's Brief at p. 3). This assertion is derived from the argument that there are exceptions to the requirements of section 327(a) because subsection (a) "must be read in light of 11 U.S.C. § 327(b) and 11 U.S.C. § 1107(b)." *Id.* (Citing *In re Heatron, Inc.,* 5 B.R. 703 (Bankr.W.D.Mo.1980)).

■ The Baran firm's reliance upon sections 327(b) and 1107(b) as savings provisions permitting the employment of a non-disinterested person as counsel for the *debtor in possession* is without merit. There is nothing in sections 327(b) or 1107(b), the legislative history of the Code nor the applicable case law which support the proposition that sections 327(b) or 1107(b) override the disinterestedness requirement of section 327(a) in the appointment of counsel for the debtor in possession. Section 327(b) provides as follows:

If the trustee is authorized to operate the business of the debtor ... and if the debtor has regularly employed attorneys, accountants, or other professional persons on *salary,* the trustee may *retain* or replace such professional persons *if necessary in the operation of such business.* (Emphasis added)

The purpose of this provision is to enable an operating business to retain the same employee structure that existed prior to the filing of the Chapter 11 petition. *See 2 Collier on Bankruptcy,* para. 327.04. (15th ed. 1984) Section 327(b) is intended to facilitate the ability of a business to continue to operate while it is undergoing reorganization. Thus, the salaried employees and professional persons will be retained by the trustee or debtor in possession "if necessary in the operation of such business." 11 U.S.C. § 327(b). For example, many debtor corporations have a legal department which may be of service to the trustee or debtor in possession in routine legal matters incident to normal business activity. 2 *Collier on Bankruptcy,* para. 327.04 at p. 29 n. 2 (15th ed. 1984). Most importantly, section 327(b) is a practical device which enables the trustee or debtor in possession to forego any formalistic requirements of court appointment in employing those who have been regularly employed by the debtor corporation. In this way, section 327(b) serves a useful, but limited, purpose. It cannot be read so broadly as to confer the right upon the debtor in possession to retain as counsel one who is non-disinterested by reason of his prior and continuing employment as an officer and director of the debtor corporation. Such a reading of the statute miscomprehends the purposes and policy of section 327(b).

■ Like section 327(b), section 1107(b) has a far narrower reach than the interpretations given to it by movant's brief. Section 1107(b) provides:

Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or repre-

sentation of the debtor before the commencement of the case.

Section 1107(b) works as follows:

> Presumably, a person may be employed by or represent the debtor even though such a person is a creditor by reason of services rendered prior to the filing date for which compensation has not been received. But for this exception, section 1107(a) would subject the debtor in possession to the strict limitations contained in section 327(a). Thus, the debtor, as debtor in possession, would be barred from retaining as "professional persons" the services of its directors, officers, employees or investment banker.

5 *Collier on Bankruptcy*, para. 1107.03 at p. 8 (15th ed. 1984). Not unlike section 327(b), section 1107(b) facilitates the post-petition operation of the debtor in possession by permitting the key personnel to remain in place despite the fact that they are pre-petition creditors by virtue of unpaid compensation. In this respect, section 1107(b) is a necessary supplement to section 327(b). Without section 1107(b), the debtor in possession would often have to forfeit the services of personnel who are necessary for the continued operation of the business.

Nevertheless, section 1107(b) cannot be read as providing a blanket exception whereby wholesale categories of non-disinterested persons are retained as counsel to advise the debtor with respect to the reorganization. To interpret section 1107(b) so broadly would effectively nullify the disinterestedness requirement as defined by section 101(13)(D) and incorporated into section 327(a); and it would permit the employment of officers and directors as counsel for the debtor in possession. Such a result ignores history and is contrary to the longstanding policy of the bankruptcy laws to keep these individuals out of the position of counsel for the debtor undergoing reorganization.

**8.** *See In re Michigan Interstate Ry. Co. Inc.*, 32 B.R. 327 (Bankr.E.D.Mich.1983), where the court disqualified a law firm that had been appointed to represent the trustee when it was

### B

■ It is because of the Bankruptcy Code's policy prohibiting the appointment of non-disinterested persons to serve as counsel for the Chapter 11 debtor in possession that the Bankruptcy Rules are structured to insure that an attorney's connections with the debtor and other interested parties are revealed to the court before the appointment is made. Thus, Bankruptcy Rule 2014 provides in part as follows:

> An order approving the employment of attorneys ... pursuant to section 327 or 1103 of the Code shall be made only on application of the trustee or committee, *stating the specific facts showing* the necessity for the employment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered, any proposed arrangement for compensation, and ... *all of the person's connections with the debtor, creditors, or any other party in interest,* their respective attorneys and accountants. (Emphasis added).

As stated previously, Mr. Baran did not comply with Rule 2014, in that his application for employment did not reveal to the court that he was both an officer and director of the debtor. Had he properly revealed this information, he would not have been appointed in the first place because his status as an officer and director of the debtor would have prompted the court to deny his application as being contrary to section 327(a). *See In re Leisure Dynamics,* 32 B.R. 753, 9 C.B.C.2d 265 (Bankr.D. Minn.1983), *aff'd* 33 B.R. 121, 11 B.C.D. 1116 (D.Minn.1983).[8]

### C

It is argued that despite the fact that Mr. Baran is not disinterested, that there are policy considerations which should override the prohibitions stated in section 327(a). Movants' brief claims that prohibiting a

discovered that the firm's application for appointment contained a material misstatement about the firm's relationship with the debtor.

secretary or an assistant secretary from serving as counsel for the debtor in possession "would have a chilling effect upon the attorney/client relationship" because corporate clients might be deprived of legal input and the service of "placing the corporate minutes and records of the corporation in the hands of an individual who will see to their proper preparation and updating." (Movants' Brief at p. 4.)

The court will abstain from addressing this sort of policy argument. Congress has already clearly and unequivocally rendered its own policy judgment by promulgating section 327(a), and it is not for the courts to second guess such determinations. *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 97 n. 41, 101 S.Ct. 1571, 1584, n. 41, 67 L.Ed.2d 750 (1981).[9]

## V

Mr. Nelson's representation of Charles H. Au, the sole stockholder and president of the debtor corporation, while representing simultaneously the debtor in possession raises an important issue: To what extent may counsel for the debtor in possession provide legal representation to the debtor corporation's officers, directors and shareholders during the pendency of the Chapter 11 proceedings? It is often the practice, in the interest of efficiency, for counsel for a corporation to render legal services to its officers, directors and shareholders. The representation of both the corporation and its personnel may involve matters of parallel interest and, therefore, such dual representation may appear quite logical and prudent. *See* ABA Model Rules of Professional Conduct Rule 1.13(e).

Is such dual representation during the pendency of a Chapter 11 case compatible with the "disinterested" requirement of section 327(a)?

As previously seen, the drafters of Chapter X and former Rule 10–206 sought to prevent reorganizations from being controlled by a select inside group who would tend to benefit themselves at the expense and detriment of creditors and other interested groups. This same policy carried over into Chapter 11 and is reflected in section 327(a) of the Code. Yet, the Code does not directly address the question of whether counsel for the debtor in possession is precluded from also representing officers, directors or stockholders during the pendency of the Chapter 11 case.

Section 101(13)(E) defines a disinterested person as one who "does not have an interest *materially adverse* to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or for any other reason." (Emphasis added) While the Code does not expand upon what constitutes a "materially adverse" interest, the leading treatise states: "It [§ 101(13)(E)] appears broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code." 2 *Collier on Bankruptcy*, para. 327.03[f] at p. 18 (15th ed. 1984).

The Code of Professional Responsibility is helpful in this matter. Particularly relevant is Ethical Consideration 5–18 which states as follows:

> A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative or other person connected with the entity. In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of

9. Mr. Baran also argues that because his duties as director and secretary are "ceremonial," the court should accept this as evidence rebutting the presumption of non-disinterestedness. Neither the Bankruptcy Code nor the case law, however, makes the distinction as to whether the officer's or director's role is or is not merely "ceremonial." *See In re B.E.T. Genetics, Inc.*, 35 B.R. 269, 11 B.C.D. 845, 847 (Bankr.E.D.Calif. 1983) ("this court cannot find any authority which would negate the finding that as an officer of the corporation, even without decision-making authority, he is considered an insider and therefore an interested person").

any person or organization. Occasionally, a lawyer for an entity is requested by a stockholder, director, officer, employee, representative, or other person connected with the entity to represent him in an individual capacity; in such case, the lawyer may serve the individual only if the lawyer is convinced that differing interests are not present.

In the context of reorganization proceedings, therefore, the lawyer's primary allegiance must be directed toward the corporate debtor in possession. The best way to obtain this result is to retain counsel who can advise the debtor with "a high degree impartiality and detached judgment expected of them during the case." 2 *Collier on Bankruptcy*, para. 327.03[3][a] at p. 12.

There are several dangers which may arise when an attorney undertakes simultaneous representation. One is that an attorney who represents dual interests may develop "a sense of loyalty" to one client that will "undermine" his representation of another. *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1247 (2d Cir.1979); *see also International Business Machines Corp. v. Levin*, 579 F.2d 271, 280 (3d Cir.1978) (dual representation may result in "a diminution of the vigor of his representation" of a client). In the context of Chapter 11, when and if the loyalty shifts from the debtor in possession to the officer, director or shareholder, there may arise the same situation which the drafters of Chapter X sought to prevent; thus, the attorney may be consciously or unconsciously tempted to serve the interests of the insider to the detriment of both the estate and creditors. Obviously, it would be anamolous for the bankruptcy laws to prevent an officer, director or shareholder from exercising total control over a reorganization as insiders, while at the same time permitting an attorney for these insiders to exercise control over the reorganization in the capacity as attorney

for the debtor. *See In re Chou-Chen Chemicals, Inc.*, 31 B.R. 842, 10 B.C.D. 1103, 8 C.B.C.2d 1240 (Bankr.W.D.Ky. 1983).

Section 327(a), as it affects the debtor in possession, provides the officers, directors and those who are overseeing the reorganization of the debtor with the detached and impartial advice of counsel. One of the roles of an attorney for a debtor in possession is to act, in effect, as a counterweight to the insiders' tendency to favor their interests above others in the reorganization process. This role is consistent with the notion that whatever benefits the officers, directors and shareholders is not necessarily beneficial to the estate, and vice versa. Therefore, in the formulation of a plan of reorganization and in dealing with the affairs of the reorganization in general, counsel must act with the utmost loyalty to the debtor, and hence to its estate, free from the danger of his loyalties shifting to other parties.

The court is unable to state categorically that Mr. Nelson's loyalties have shifted to Charles H. Au. But what must be guarded against are not only the identifiable instances of impropriety, but also the appearance thereof. *See* ABA Code of Professional Responsibility, Canon 9; *In re Perry, Adams & Lewis Securities, Inc.*, 5 B.R. 63, 64 (Bankr.W.D.Mo.1980).

As was stated earlier, Mr. Nelson submitted to this court an interim fee application requesting compensation for duties performed for the debtor in possession in the amount of $31,252.50. While Mr. Nelson was performing these duties for the debtor in possession, he was also performing personal legal services for Mr. Au. Mr. Nelson's compensation for these services was $32,551.04. While this alone does not suggest a shifting of loyalties, the danger is clear and present.[10]

---

10. *See In re Bergdog Productions of Hawaii, Inc.* 7 B.R. 890, 892 (Bankr.D.Hawaii 1980) ("In the present case, the applicant, who is the attorney for the debtor corporation, entered into an arrangement whereby compensation is being paid by Edwin Yee, the principal shareholder and chief executive of the debtor corporation. This arrangement places the applicant in the situation of an honest practitioner who may be required to choose between the interests of his client, the debtor corporation and the interest of Edwin Yee.... [posing] a substantially greater

It is upon these considerations that the court finds that Mr. Nelson is no longer a disinterested person with respect to his duties as counsel for the debtor in possession, and the doubts which have been raised concerning the propriety of his dual capacity, must be resolved against him. *See Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir.1978); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 757 (2d Cir.1975).

## CONCLUSION

In the court's previous decision in this matter, it was noted that the sanction of disallowing compensation to attorneys found to be non-disinterested was a rather imperfect solution to the problem presented here. Instead, the court chose the sanction of disqualification as the best way to "advance the public image of a judicial system that demands the very strictest adherence to the laws and codes of professional responsibility." A recent scholarly study described the sanction of disqualification as follows:

> Yet situations also arise in which courts see disqualification as a uniquely appropriate remedy; here the emphasis tends to shift away from the culpability of the attorney's conduct. Courts frequently point out that the decision to disqualify an attorney does not require a finding of improper, or even morally blameworthy, conduct. Breach of a prophylactic rule is, at least in some cases not wrongful conduct in and of itself. Disqualification in these cases is justified as a protection for the rights of parties before the court and not as punishment for errant attorneys.

*Developments in the Law—Conflicts of Interest in the Legal Profession*, 94 Harv. L.Rev. 1244, 1473–74 (1981).

These principles are applicable to this proceeding. The court has not rendered, and will not render, a moral judgment on the conduct of Mr. Baran and Mr. Nelson. Yet, the court cannot abdicate its role of insuring that all of the parties in this case are guaranteed fair treatment in the reorganization process. Accordingly, the court must reaffirm its prior order disqualifying the Baran and Boggs firms from serving as counsel for the debtor in possession. An appropriate order will enter forthwith.

temptation for the debtor's attorney to deviate from his duty of undivided loyalty to his client, the corporate debtor.")