**In the Matter of ROGER J. AU & SON, INC., Debtor in Possession.**

**Bankruptcy No. 683–00986.**

United States Bankruptcy Court, N.D. Ohio.

Oct. 14, 1986.

MEMORANDUM OF DECISION RE: MO-
TION TO DISQUALIFY DEBTOR'S
COUNSEL, TO DENY ALL FUTURE
COMPENSATION AND TO RE-
QUIRE DISGORGEMENT OF PAST
COMPENSATION

JAMES H. WILLIAMS, Bankruptcy
Judge.

The court has pending before it two applications for interim compensation filed on behalf of the former co-counsel of the Chapter 11 debtor in possession, Roger J. Au & Son, Inc. (Au & Son). The first application requests fees in the amount of $46,612.50 and reimbursement of expenses totaling $3,352.49 in connection with services rendered by Jeffrey A. Nelson, Esq. of the law firm of Boggs, Boggs & Boggs Co. L.P.A. (Boggs firm). The second applicant, Baran & Baran Co. L.P.A. (Baran firm) has filed a request for fees of $103,492.00 and reimbursement of expenses of $6,268.51 for

the efforts of one of its members, Edward C. Baran, Esq. Both counsel and their respective firms were disqualified from further representation of Au & Son by order of this court dated March 30, 1984. 65 B.R. 322. The court determined as part of its ruling that the issue of compensation would be deferred until a final resolution of the disqualification issue. On July 11, 1984 the court denied a motion for alteration of judgment or new trial submitted on behalf of the firms. A timely appeal was filed on behalf of both firms.[1] On June 11, 1986 the district court affirmed. 64 B.R. 600. No appeal was taken from that decision and the issue of compensation is now ripe for this court's determination.

## BACKGROUND

The court hereby adopts and incorporates by reference its findings of fact in the two prior disqualification decisions rendered in this case: *In re Roger J. Au & Son, Inc.*, 65 B.R. 322 (March 30 and July 11, 1984). A brief summary of those facts relevant to the issue of compensation is appropriate.

Au & Son filed a petition for relief under Chapter 11 of Title 11 of the United States Code in the Bankruptcy Court in Toledo, Ohio on July 26, 1983. The petition was signed by Jeffrey A. Nelson of the Boggs' firm as preparer. The debtor's Schedules and Statement of Affairs, including a Statement of Fees Already Paid and Promised to be Paid to its attorneys, was filed on August 10, 1983. Pursuant to Section 327 of the Bankruptcy Code, Au & Son filed an application seeking the employment of Nelson, Baran and their respective firms as attorneys for the debtor in possession which was granted by the court on August 15, 1983.[2] The case was transferred to this court shortly thereafter upon a motion for change of venue filed by Au & Son's major secured creditor, Michigan National Bank of Detroit (MNBD).

---

**1.** In the original notice of appeal, Baran & Baran Co. L.P.A. was included as an appellant. Prior to its decision, the district court granted the firm's uncontested motion to dismiss its appeal.

**2.** The debtor also sought and obtained approval of the appointment of George A. Howells, Esq., of Catri, Howells, Kellam & Owens Co., L.P.A. as attorneys for the debtor in possession.

The debtor's relationship with the Boggs' firm began in 1983 when it retained Nelson to defend certain admiralty claims. Prior to the filing of the petition, Nelson performed services for the debtor's principal officer and sole shareholder, Charles H. Au, as well as various related affiliates. During the course of the Chapter 11 proceeding Mr. Nelson also provided legal services to Charles H. Au and members of the Au family personally, including services related to the potential liability of Mr. Au arising from his personal guarantee of various loans from MNBD. Payments for these services were made to Mr. Nelson from Mr. Au totaling $32,551.04 during the pendency of the Chapter 11 proceedings. Boggs' first interim fee application filed on March 1, 1983 did not disclose these payments. In addition, the petition did not disclose payments received by Mr. Nelson as counsel for Au & Son in the admiralty actions or as counsel to Mr. Au personally prior to the bankruptcy filing.[3]

Edward C. Baran, Esq. became legal counsel for Au & Son and its various corporate affiliates in 1975. In 1976 Mr. Baran became corporate secretary, a role that along with his corporate directorship has continued during the pendency of the Chapter 11 proceeding. While this fact was revealed in the debtor's Statement of Affairs, no such disclosure was made in the firm's application for employment. Payments were also made to the Baran firm by related entities both pre-petition and on the date of filing. No disclosure of these payments was made in the schedules, application for employment or Baran's first application for interim compensation.[4]

The court disqualified both counsel under 11 U.S.C. § 327(a). The court found that Mr. Nelson's representation of Mr. Au rendered him not "disinterested" and that Mr. Baran's status as a corporate officer and director qualified him as an "insider" and thus not "disinterested." Therefore, the court concluded that both men and their firms were ineligible to serve as counsel under 11 U.S.C. § 327(a). *See* 11 U.S.C. § 101(13)(B), 11 U.S.C. § 327(a). The district court's affirmance leaves for determination the sole remaining issue of whether either firm is entitled to compensation under the Bankruptcy Code and the Bankruptcy Rules.[5]

## DISCUSSION

### A

■ Section 327 of the Bankruptcy Code governs the employment of professional persons in a Chapter 11 proceeding and provides in relevant part:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraiser, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

  .    .    .    .    .

(c) In a case under Chapter 7 or 11 [of] this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, but may not, while employed by the trustee, represent, in connection with the case, a creditor.[6]

---

3. Subsequent to the court's March 30, 1984 Memorandum of Decision and Order disqualifying counsel, both counsel have submitted amended disclosure statements revealing their connections with the debtor and payments made to them by the debtor and related entities.

4. *Id.*

5. By order of the Supreme Court dated April 5, 1983 the Bankruptcy Rules became effective on August 1, 1983 and were made applicable to all pending proceedings except if "in the opinion of the court their application would not be feasible

or would work injustice." The court finds no basis for such an exception here.

6. Public Law No. 98–353, Section 430(c) amended subsection 327(c) to read as follows:

In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor, in which case the court shall disapprove such employment if there is an actual conflict of interest.

The restrictions of Section 327 apply to a debtor in possession. 11 U.S.C. § 1107, *In re Roberts*, 46 B.R. 815 (Bankr.N.D.Ga. 1985). An attorney seeking employment under Section 327 is required under the Bankruptcy Rules to disclose certain information. Bankruptcy Rule 2014(a) states:

*Application for and Order of Employment.* An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professional persons pursuant to § 327 or § 1103 of the Code shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for his selection, the professional services to rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the persons's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

An attorney for the debtor is also required to supply information regarding payment of his or her services under 11 U.S.C. § 329(a) which reads:

Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of and in connection with the case by such attorney, or the source of such compensation.

Bankruptcy Rule 2016(b) implements this Section and requires that the statement be filed on or before the first date set for the meeting of creditors.

■ An attorney appointed by the bankruptcy court has a fiduciary obligation to that court. The standard imposed on fiduciaries seeking compensation in a bankruptcy case is a high one.

A fiduciary ... may not perfect his claim to compensation by insisting that although he had conflicting interests, he served his several masters equally well or that his primary loyalty was not weakened by the pull of his secondary one. Only strict adherence to these equitable principles can keep the standard of conduct for fiduciaries "at a level higher than that trodden by the crowd." See Mr. Justice Cardozo in *Meinhard v. Salmon*, 249 NY 458, 464, 164 NE 545, 62 ALR 1.

*Woods v. City National Bank & Trust Co. of Chicago*, 312 U.S. 262, 269, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941). (Discussing a bond holders protective committee).

■ In Section 328(c) Congress has provided a "penalty" for professionals who are disqualified due to a conflict of interest. S.Rep. No. 989, 95th Cong.2d Sess. 39 (1978); H.Rep. No. 595, 95th Cong.1st Sess. 328–29 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787. Section 328(c) provides:

Except as provided in section 327(c), 327(e) or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

As the use of the word "may" denotes, denial of compensation is a matter of discretion with the court. *In re Haldeman Pipe & Supply Company*, 417 F.2d 1302 (9th Cir.1969); *In re Roberts, supra.* "The general rule should be that all fees are denied when a conflict is present, but court should have the ability to deviate from that rule in those cases where the

---

Public Law No. 98–353, Section 553(a) states that the requirement of an "actual" conflict of interest affects only those applications presented in cases filed after October 7, 1985.

need for attorney discipline is outweighed by the equities of the case." *In re Watson Seafood & Poultry Co., Inc.* 40 B.R. 436 (Bankr.E.D.N.C.1984). However, when an actual conflict of interest is present, the Sixth Circuit has held it is an abuse of discretion to allow any compensation. *In re Georgetown of Kettering Ltd.*, 750 F.2d 536 (6th Cir.1984). In *Georgetown*, the Sixth Circuit was confronted with a situation where counsel for the debtor also represented its president personally as an unsecured creditor, as well as various related entities who were also creditors of the debtor. The Sixth Circuit found the interests represented by counsel to be inherently conflicting and impermissible under 11 U.S.C. § 327(c). The court further held that since an *actual* conflict existed, the lower courts had erred in allowing any compensation. The Sixth Circuit relied on the following language as set forth by the Supreme Court in *Woods; supra:*

> [T]he incidence of a particular conflict of interest can seldom be measured with any degree of certainty. The bankruptcy court need not speculate as to whether the result of the conflict was to delay action where speed was essential, to close the record of past transactions where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undivided loyalty owed to those whom the claimant purported to represent. Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation.

*Georgetown* at 540 citing *Woods*, 312 U.S. at 269, 61 S.Ct. at 497.

■ Failure to disclose facts giving rise to a conflict of interest is an independent basis for denial of compensation. *In re Thompson*, 54 B.R. 311 (Bankr.N.D.Ohio 1985); *In re Guy Apple Masonry Contractor, Inc.*, 45 B.R. 160 (Bankr.D.Ariz.1984). As the bankruptcy court in *Thompson* explained:

> A law firm representing the trustee or debtor in possession pursuant to subsection 327(a) has an affirmative duty to disclose any potential conflict of interest

to the court so that the court may rule upon that issue. *In re B.E.T. Genetics, Inc.* 35 B.R. 269, 273 (Bankr.E.D.Calif. 1983) (citing Interim Rule 2006). Accord, *In re D.H. Overmyer Telecasting Co., Inc.* 29 B.R. 647, 650 (Bankr.N.D.Ohio 1983) (citing Bankruptcy Rule of Procedure 215(a). *See also, In re Jensen-Farley Pictures, Inc.* 47 B.R. 557, 579 (Bankr.Utah 1985) (those seeking appointment as professional persons in bankruptcy cases owe the duty of complete disclosure of all facts bearing upon their eligibility for such appointment), and *Roaring Creek Mining Co., Inc.* 51 B.R. 866, CCH para. 70693 at 87,532 (the court must have an opportunity to decide if the attorney is representing an adverse interest before he renders services to the estate). This court is guided by the well-reasoned opinion in *In re Guy Apple Masonry Contractor, Inc.*, 45 B.R. 160 (Bankr.D.Ariz.1984). Failure to disclose the facts giving rise to a conflict of interest are (sic) grounds for denial of compensation. Full disclosure requires disclosure of any connection which *may* have a bearing on the attorney's or law firm's ability to represent the trustee free of any conflict or adverse interest. " 'If the rule [of complete disclosure] is to have vitality and the evils against which it is aimed are to be eliminated, it should be enforced literally,' " and counsel who has failed to comply with the disclosure requirement should be denied compensation. *[In Re] Futuronics Corp.*, 655 F.2d at [463] 469.

*Thompson* at 317 (emphasis in original).

B

■ With the above principles in law in mind the court turns to the two applications before it. The firms urge the court to follow the equitable rule enunciated in *Watson Seafood* and argue that compensation should be allowed as the benefits to the estate far outweigh any need for attorney discipline. The court agrees that an equitable approach as opposed to any hard and fast rule denying compensation is the better one and is consistent with the discre-

tionary language embodied in 11 U.S.C. § 328(c). This discretion is limited by the dictates of the Sixth Circuit which tip the scales in favor of attorney discipline whenever an actual conflict is present.

■ The first concern the court must address is whether the Boggs firm's representation of both the debtor and its president is an actual conflict of interest within the meaning of *Georgetown.* The district court characterized the Boggs' dilemma as being an "actual potential" conflict. The court finds that the word "actual" as used by the district court is not synonymous with the meaning of the term as used by the Sixth Circuit. The district court used "actual" as opposed to hypothetical or theoretical.[7] The Sixth Circuit was distinguishing between present or unconditional conflicts and future or conditional conflicts. More precisely, the phrase "actual potential" conflict as used by the district court means a real but contingent conflict. Therefore the court finds no actual conflict warranting denial of compensation under *Georgetown.*

■ The second concern faced by the court is the failure of both counsel and their respective firms to adequately disclose their relationships with the debtor, the Au family and related Au entities prior to their appointment. Mr. Baran's omission is particularly unsettling as his conflict was readily apparent from even a cursory reading of the Code. Further, this court specifically found that "[H]ad he properly revealed this information, he would not have been appointed in the first place because his status as an officer and director of the debtor would have prompted the court to deny his application as being

contrary to Section 327(a)." *In re Roger J. Au & Son, Inc.,* 65 B.R. 322, 333 (July 11, 1984). Mr. Nelson's omissions, while not as glaring, are also subject to criticism. At the time of the filing, Mr. Au, as a guarantor of the MNBD obligations, was a contingent creditor of the estate, a fact which along with the past representation of the various Au family members, should have been revealed.

The court does not condone such behavior from officers of the court, but it firmly believes neither counsel harbored any intent to deceive or conceal these facts from the court or creditors. While such conduct is obviously negligent, the substantial effort expended upon this case persuades the court to deviate from what would normally be its flat denial of compensation.

■ Having found that the firms are entitled to some compensation under the equitable approach set forth in *Watson Seafood,* the court must now review the applications to arrive at a reasonable allowance of compensation under 11 U.S.C. § 331. Upon review of both applications, the court finds that the determination of any award of compensation should be deferred to a later date. Both fee requests are styled as interim applications. The court believes that the applications should more appropriately be final requests, since at this juncture it is evident that neither firm will be performing any future services as attorneys for the debtor in possession. Further, the Baran firm's application lacks sufficient detail and documentation to support any award.[8] Without such detail, the court has no ability to scrutinize either application for such defects as duplication

---

7. The district court described the Boggs firm's conflict as an "actual potential conflict" and cited *In re O'Connor,* 52 B.R. 892, 897 (Bankr.W. D.Okla.1985). As footnoted by the district court, the *O'Connor* court determined that "Disqualification should be mandated when an actual as opposed to hypothetical or theoretical, conflict is present. This no way precludes disqualification for a potential conflict. The test is merely one for a potential actual conflict." *In re Roger J. Au & Son, Inc.,* 64 B.R. 600, 605 n. 7 (N.D.Ohio 1986). The district court appears to

have reversed the order when describing the Boggs' conflict.

8. The Baran firm's first interim application was denied by the court on March 7, 1984 due to its insufficient supporting documentation. The firm's "amended and updated application" merely brings its request current without addressing the court's substantive concerns. For a discussion of the proper contents of an attorney's fee application, *see Cohen & Thiros, P.C.V. Keen Enterprises, Inc.,* 44 B.R. 570 (Bankr.N.D. Ind.1984).

of effort, excessive or unreasonable charges or otherwise evaluate the requested fees. Accordingly, the court will direct that both firms file final applications with supporting documentation prior to any allowance of fees or expenses.[9]

An order consistent herewith shall issue forthwith.

---

9. The court notes that both firms' applications include charges for services rendered in connection with a related Chapter 11 debtor in possession, CDECO Maritime Construction, Inc., No. 83–00985 (CDECO). Au & Son and CDECO were consolidated for administrative purposes and, as such, the court will deal with the issue of compensation for the firms as counsel for CDECO at the same time as Au & Son.