In re **MICHIGAN INTERSTATE RAIL-WAY COMPANY, INC., d/b/a Ann Arbor Railroad System, Debtor.**

**Bankruptcy No. 83–00054.**

United States Bankruptcy Court,
E.D. Michigan, S.D.

Aug. 17, 1983.

As Revised Oct. 5, 1983.

Steven H. Keeney, Louisville, Ky., for Barnett & Alagia, respondent.

## REVISED MEMORANDUM OPINION AND ORDER

STANLEY B. BERNSTEIN, Bankruptcy Judge.

*Introduction:*

The Court issued an Order to Show Cause to the law firm of Barnett & Alagia (firm) why the prior order appointing the firm as counsel for the trustee should not be vacated. A protracted hearing was held on the show cause order.

*Factual Background*

On January 20, 1983, the firm filed a Ch. 11 petition under the railroad reorganization provisions of the Bankruptcy Code, 11 U.S.C. §§ 1161–1174, for the Michigan Interstate Railway Company, a Michigan corporation, doing business as the Ann Arbor Railway (Railway). Immediately after the petition was filed, the chief operating officer of the Railway, Vincent M. Malanphy (Malanphy), filed an ex parte application to have himself appointed as interim trustee to operate the Railway. The application was prepared by the firm. With considerable reservation, the Court entered an order appointing Malanphy as interim trustee for the limited period to run from the date of filing the petition until the appointment of a successor trustee to be nominated by the Secretary of the U.S. Department of Transportation. For 11 U.S.C. § 1163 provides:

> As soon as practicable after the order for relief, the Secretary of Transportation shall submit a list of five disinterested persons that are qualified and willing to serve as trustee in the case. The Court shall appoint one of such persons to serve as trustee in the case.

The Code does not provide any direction to the Court for managing the Railway until the trustee nominated by the Secretary is appointed. As a stop gap measure, the Court, in effect, continued the chief operating officer in order to keep disruptions in operations to a minimum. The firm disclosed that Malanaphy was also an equity security holder besides being an officer and director.

The interim trustee then immediately made written application to have the firm appointed as his counsel. All of these papers were drafted in advance of the filing of the Ch. 11 petition. The Court entered the requested order on the provisio that the Kentucky-based firm arrange for the appointment of local counsel to reduce costs of administration and satisfy our local rules. The application, prepared by the firm, included the necessary affidavit generally attesting to the fact that every person associated with the firm was "disinterested." 11

U.S.C. § 327(a) requires that attorneys employed by a trustee be "disinterested persons." 11 U.S.C. § 101(13) defines "disinterested person" by *exclusion.* Under the exclusions are (A) "a creditor, and equity security holder, or an insider," and "(D) within two years before the date of the filing of the petition, a director, officer or employee of the debtor . . ."

Paragraph 2 of the affidavit recited in carefully drafted language the following:

> Neither I, the law firm of Barnett & Alagia, nor any member or associate thereof, insofar as I have been able to ascertain, have any connection with the debtor, its creditors, any other party in interest or their attorneys, except that an attorney from Barnett & Alagia has served as general counsel to the debtor.

At the show cause hearing testimony was elicited from the firm: to the following effect. Charles Chapman, who serves as General Counsel to the Railway, was, at all relevant times, also an equity security holder, an officer and a director of the railway. The schedules filed with the voluminous petition listed all of the equity security holders, including Malanaphy and Chapman—there were only 6 equity shareholders. Chapman held 90 of 1200 issued and outstanding shares; Malanaphy held 509 shares. The firm did not dispute the fact that had the attorney reviewed the schedules which he filed, he would have discovered the error in his affidavit. The partial excuse proffered was that the error of omission was not discovered in the rush of events which usually accompanies any filing of a major Ch. 11 case. No explanation was proffered by the firm why the error was not subsequently discovered or disclosed to the Court.

Mr. Chapman testified at the show cause hearing concerning his relationship to the firm and the Railway. His field of specialization is railroad law; he was associated in the past with several railroads or firms representing railroads. He was one of the incorporating directors of the Railway in 1977 along with Malanaphy. He served as vice president and general counsel from the formation of the company and was compensated under an executive compensation agreement. Indeed, the debtor included the compensation agreement on its list of executory contracts filed with its petition.

Chapman further testified that he joined the firm as a special partner in January of 1981. He explained that the firm has hired persons as special counsel when it perceives a need for experienced attorneys in specialized areas of expertise. These lateral appointees are not signatories to the partnership agreement and, as such, do not share in the profits and losses of the firm. Capital partners, in contrast, are signatories to the partnership agreement and, as such, share in the profits and losses of the firm. The firm's public announcements and its printed letterhead, do not, however, draw the distinction between special and capital partners.

Chapman also testified that the firm does not bill the Railway or the trustee for legal or other services which he provides, although such services exhaust between 40 to 60% of his professional time. It does not follow, however, that when he speaks with other members of the firm on matters relating to the Railway's business, the other members of the firm do not bill their participation in the telephone call. The firm's application for interim fees puts that beyond dispute. It is also apparent that Chapman brought the Railway to the firm for Ch. 11 representation.

■ In light of the foregoing, the material misstatement in the firm's affidavit is inexcusable. The firm breached its duty to inquire about the exact relationship between the Railway, its creditors, and the partners and associates of the firm.

■ Nor can this Court condone Chapman's sale of his 90 shares of stock to another shareholder of the Railway on the

Friday preceding the Monday show cause hearing, nor of his resignation as an officer and director. It is too late in this case to "cure the default" in this manner.

■ We next consider the argument of the firm that it is disinterested. Under that theory, the firm as a partnership entity is not an equity security holder, an officer, or director; therefore, the firm is disinterested. That may be formally correct, but this Court is of the opinion that the "insider" characteristics of one lawyer associated with the firm, whether he or she be an associate, a special partner, or a capital partner, are sufficient to strip the firm of its claim to disinterestedness. A firm, whether a partnership or a professional corporation, is at root an association of lawyers servicing the clients of the firm; its internal arrangements for compensation are irrelevant to the issue of disinterestedness.

■ In this case, the firm contends that it serves only as "special counsel" for the successor trustee. According to the firm, it has acted for the successor trustee only as reorganization counsel and in that capacity deserves the label "special counsel." By this distinction, the firm seeks the protection of the less restrictive requirements for special counsel in 11 U.S.C. § 327(e) which do not include "disinterestedness." That is sheer sophistry as the records of this case overwhelmingly demonstrate. For reasons of his own, the successor trustee has continued to rely upon the firm for his *basic* legal services rather than retain independent counsel not having any relationship with the principals of the debtor. Thus, 11 U.S.C. § 327(e) does not apply to the facts in this case; indeed 11 U.S.C. § 327(e) draws the critical distinction between counsel employed by the trustee for a "specified special purpose" versus representing the trustee "in conducting the case." Surely the records in this case support the finding that the firm has been representing the trustee in conducting the case.

■ Finally, the firm has argued that no conflict of interest has been shown, and that the appearance of conflict is too slim a reed on which to ground vacating its appointment. This Court disagrees. Especially in a railroad reorganization case in which the appointment of a trustee is mandated and no creditors committee can be appointed, counsel for the trustee must be completely independent of the controlling persons in the debtor corporation. It defies reason and belief to suggest that the firm can exercise the independence of judgment necessary to the performance of its duties in this case when its special partner brought the firm to this case and its duties may well include taking a position adverse to the interests of its special partner and his fellow equity security holders. If it can achieve such independence, it will be at the cost of ingratitude.

In light of the foregoing, the firm of Barnett & Alagia is removed as counsel to the successor trustee as of August 17, 1983.

SO ORDERED.