In re B.E.T. GENETICS, INC., a California corporation, doing business as Heritage Farms, and formerly known as Bovine Embryo Transplants, Inc., Tax I.D. No. 94–2582703, Debtor.

Bankruptcy No. 282–05154–D–11.

United States Bankruptcy Court, E.D. California.

Dec. 5, 1983.

Russell, Jarvis, Estabrook & Dashiell, Sacramento, Cal., for Creditors Committee.

Felderstein, Rosenberg & McManus, Sacramento, Cal., for Dairy World Genetics.

Law Offices of John T. Hansen, San Francisco, Cal., Hefner, Stark & Marois, Sacramento, Cal., Niesar, Moody, Hill, Massey & Kregstein, San Francisco, Cal., for debtor.

## MEMORANDUM OPINION AND DECISION

LOREN S. DAHL, Bankruptcy Judge.

### FACTS

The debtor, B.E.T. Genetics (B.E.T.) filed a Chapter 11 petition on December 23, 1982. Shortly thereafter, on December 30, 1982, this court authorized the debtor to employ the Law Offices of John T. Hansen and Niesar, Moody, Hill, Massey & Kregstein as its counsel. Both of these firms have applied for interim compensation. The application of John T. Hansen is not at issue in this dispute.

The Niesar firm seeks $1,170.04 in expenses and $20,718.50 as attorney fees for services rendered from January 1983 through June 1983, at which time the firm withdrew as counsel for the debtor. Since the firm has received a retainer of $16,463.21, it claims an interim balance due of $5,425.33. The Creditors Committee and Dairy World Genetics object to the fee application of the Niesar firm. The Creditors Committee also moves this court for recovery of the $16,463.21 retainer paid to the firm.

The declarations, points and authorities, and oral argument of the parties reveal the following facts:

1) Beginning in 1979 the Niesar firm represented B.E.T. and its related entities, the Dairy World Genetics limited partnerships, the Dairy World Farmers limited partnership, Bennett Farms Inc., and Verner Bennett. Verner Bennett was the general partner of the various limited partnerships and at one time was the Chief Executive Officer of the debtor. The Dairy World Genetics and Dairy World Farmers limited partnerships have filed claims in this bankruptcy proceeding and the debtor has filed objections based upon the amount of the claims. The limited partnerships obtained separate counsel in the summer of 1982.

2) B.E.T. made two loans to Gerald Niesar. The promissory note which is evidence of the first loan is dated September 30, 1980, and is payable to the debtor for a principal amount of $18,900.00. That note was due April 15, 1981. The second promissory note, dated September 14, 1981, is also payable to the debtor in the principal amount of $20,000.00. The final payment is due July 31, 1985, and the note calls for partial payments of interest and principal between September 1981 and July 1985. In a declaration filed with this court on September 22, 1983, Gerald Niesar states that he has made arrangements for payment of the 1980 note and that three payments have been made under the 1981 note. Niesar also states he used the loan proceeds to invest in affiliated partnerships of B.E.T.

3) During his representation of B.E.T., Gerald Niesar was designated Assistant Secretary of B.E.T.

4) The Niesar firm is listed as an unsecured creditor of the debtor for approximately $117,000.00. This amount represents attorney fees for legal services performed prior to the filing of the Chapter 11 petition.

The Creditors Committee and Dairy World Genetics argue that this court should deny the Niesar firm interim compensation because it was not disinterested and held an interest adverse to the interest of the estate. The Committee and Dairy World Genetics claim that because of its past representation of parties adverse to the debtor, a conflict of interest exists and that this conflict is materially adverse to the estate. They argue that Gerald Niesar's existing loans from B.E.T. is further evidence of a materially adverse interest. The objectors also claim that since Gerald Niesar is an officer and a creditor of the debtor, the

firm is not disinterested and as such any interim compensation should be denied.

In response, the Niesar firm argues that it was a disinterested party with regard to matters on which it was employed by the debtor and that it does not hold a materially adverse interest. The firm contends that the objectors were aware of its prior representation of the related entities and therefore they are estopped to argue that the Niesar firm should be denied compensation. The firm alleges that during the time it worked for the debtor and with respect to the matters upon which it worked, a community of interest existed among the Creditors Committee, the limited partnerships, and the debtor.

## DISCUSSION

An analysis of whether or not interim compensation should be granted in this case should begin with 11 U.S.C. Section 327(a) which states:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Although Section 327(a) is silent with regard to the employment of professionals by a debtor in possession, Section 1107(a)[1] gives the debtor in possession all of the rights and duties of a trustee. As a result, Section 1107(a) allows a debtor in possession to employ its own attorney, with the court's approval.

The first issue before the court in this application is whether or not the Niesar firm holds or represents an interest which is adverse to the estate.

1. 11 U.S.C. Section 1107(a) states,
 (a) Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section

The court first notes that Canon 9 of the Code of Professional Responsibility which states that "[a] lawyer should avoid even the appearance of professional impropriety" is followed by the courts of this circuit. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 658 F.2d 1355 (9th Cir.1981); *Trone v. Smith,* 621 F.2d 994 (9th Cir.1980). A court can disqualify counsel from a case solely on the basis of Canon 9. 658 F.2d at 1360. Courts have disqualified or denied compensation to attorneys who simultaneously represent clients who hold adverse interests to each other. *In re Chou-Chen Chemicals, Inc.,* 10 B.C.D. 1103, 31 B.R. 842 (Bkrtcy.W.D.Ky.1983); *In re Sambos Restaurants,* 20 B.R. 295 (Bkrtcy.C.D.Cal.1982); *In re Paine,* 14 B.R. 272 (D.C.W.D.Mich. 1981). And, courts have disqualified attorneys who act on behalf of a client and thereafter represent another client whose interests are adverse to the former client. *In re Philadelphia Athletic Club,* 20 B.R. 328 (D.C.E.D.Pa.1982); *In re Buchanan,* 25 B.R. 162 (Bkrtcy.E.D.Tenn.1982).

Turning to the facts of the present case, it is undisputed that the Niesar firm formerly represented the various related entities of the debtor. Although the firm argues that a community of interest existed with respect to the matters upon which it worked, the court notes that the relationship of the debtor to the related entities has been in dispute especially from April 1983 when the plan of reorganization was filed. Also, throughout its representation of the debtor, Gerald Niesar held an ownership interest in the affiliated partnerships. This court finds not only the appearance of impropriety but also the existence of an actual conflict of interest in this case.

While the Niesar firm argues that during its employment by the debtor it tried to develop a plan of interim funding

330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

which would have been beneficial to the estate and its creditors, this court need not determine the accuracy of this assertion. For once a conflict of interest is proven, a court need not determine if any unfairness also resulted. See *Woods v. City National Bank & Trust Co. of Chicago,* 312 U.S. 262, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941).

The Niesar firm cites *In re Fondiller,* 15 B.R. 890 (Bkrtcy. 9th Cir.1981) in support of its fee application. In *Fondiller* a law firm which represented certain creditors of the debtor was appointed as special counsel to the trustee to investigate and recover assets concealed or fraudulently conveyed. The appellate panel held that the portion of 11 U.S.C. Section 327(a) which states that an attorney must "not hold or represent an interest adverse to the estate" should be interpreted to mean that the attorney must not represent an adverse interest relating to the services which are to be performed by that attorney. 15 B.R. at 892. As a result, the law firm was not disqualified as special counsel.

In the present case the Niesar firm argues that since it provided specialized services to the debtor in the nature of corporate and securities law expertise, no adverse interest arose relating to those services. The firm argues that its position is analagous to that of the special counsel to the trustee in *Fondiller.*

*Fondiller,* however, is factually distinct from the present case. In that case it was clear from the outset that the law firm would perform specialized tasks. By contrast, it is not clear that the Niesar firm performed only specialized duties. For instance, the application for authority to employ counsel filed on December 23, 1982 states that the firm specializes in corporate and securities law but it does not state what the firm's role would be with respect to the bankruptcy proceeding. In addition, the application for interim compensation filed on June 6, 1983 states that the firm counseled the debtor about compliance with securities law in connection with the issuance of debt certificates and prepared and filed an application with the California Department of Corporations. Besides the above, however, the application also states that the Niesar firm "provided usual services as general counsel and secretary of the corporation, including attendance at board meetings." Thus, while this court does not doubt that the firm provided the debtor with specialized knowledge, it also appears that the firm provided other services akin to those of general counsel. Accordingly, *Fondiller* does not support the Niesar firm's position.

The next issue before the court is whether or not the Niesar firm was a disinterested person within the meaning of 11 U.S.C. Section 327(a).

A "disinterested person" is defined in part as one who "is not a creditor, an equity security holder, or an insider." 11 U.S.C. Section 101(13)(A). Section 101(25)(B) defines an insider of a corporation in part as a "(i) director of the debtor or (ii) officer of the debtor."

■ It is agreed that Gerald Niesar was designated assistant secretary and that the firm was listed as an unsecured creditor for $117,000.00. The firm argues that the position of assistant secretary was purely ministerial without decision-making authority. The firm maintains that it is disinterested based upon 11 U.S.C. Section 1107(b) and *In re Heatron,* 5 B.R. 703 (Bkrtcy.W.D.Mo. 1980).

11 U.S.C. Section 1107(b) provides,

(b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

The statute is clear that an attorney's prior representation of a debtor in possession will not disqualify that attorney. Hence, it is also clear that the Niesar firm could not be disqualified as the debtor's counsel solely on the basis of its prior representation of the debtor.

■ The court in *Heatron* held that an attorney who had represented a debtor pri-

or to the filing and who was a major creditor of the debtor *without more* did not hold an interest adverse to the estate. 5 B.R. at 705. *Heatron* is distinguishable from the present case. Here, not only did the Niesar firm represent the debtor prior to filing and thereby become a creditor, but the firm had a conflict of interest as found above. In short, more factors are present in this case than in *Heatron* which support a finding that the firm was not disinterested.

Niesar argues that his position did not have any decision-making authority and was similar to that of a notary public. However, he does not provide and this court cannot find any authority which would negate the finding that as an officer of the corporation, even without decision-making authority, he is considered an insider and therefore an interested person.

Having concluded that the Niesar firm held an interest adverse to the debtor because of its prior representation of the related entities and that the firm is not a disinterested party, the next issue is whether or not the Creditors Committee and Dairy World Genetics are estopped to argue that the firm should be denied compensation. The firm alleges that the objectors were aware of its prior representation of the related entities. In response, the attorneys for the Creditors Committee argue that they did not have knowledge of the full extent of the firm's representation of the related entities until Gerald Niesar's 205A examination held in July 1983.

 Regardless of the objectors' knowledge of the Niesar firm's past representation of the related entities, the firm did not disclose this information to this court as required by the then Interim Bankruptcy Rule 2006.[2] Conflicts of interest must be disclosed to and ruled upon by the court.[3] *In re D.H. Overmyer Telecasting Co., Inc.,* 29 B.R. 647, 750 (Bkrtcy.N.D.Ohio 1983).

 The declaration signed by Gerald Niesar in support of his application for appointment states,

> Neither I nor my firm have had any connection with any creditors of said Debtor, except as to my firm's status as a creditor of Debtor arising from services rendered to the debtor prior to the filing of the petition, nor do I or my firm have any other interest which will be adverse to the interests of the Debtor herein.

As the firm never made a complete and accurate disclosure of its involvement with the debtor to this court, it is unlikely that the firm made a full disclosure to the objectors. In any event, the consent of the debtor or creditors cannot obviate a conflict of interest. The objectors are not estopped from raising their argument.

The final issue in this case is whether or not the court can deny compensation to the Niesar firm because it held an interest adverse to the estate and was not disinterested.

11 U.S.C. Section 328(c) states,

> (c) Except as provided in section 327(c), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a

---

**2.** Interim Bankruptcy Rule 2006 provided,
> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents or other professional persons pursuant to Section 327 or Section 1103 of the Bankruptcy Code shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for such employment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered, and to the best of the applicant's knowledge all of such person's connections with the debtor,

the creditors, or any other party in interest, and their respective attorneys and accountants.

**3.** See also *In re Michigan Interstate Ry. Co. Inc.,* 32 B.R. 327 (Bkrtcy.E.D.Mich.1983). The court disqualified a law firm that had been appointed as counsel for the trustee when it was discovered that the firm's declaration contained a material misstatement about the firm's relationship with the debtor. The court held such a material misstatement was "inexcusable." 32 B.R. at 330.

disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

The court in *In re 765 Associates,* 14 B.R. 449 (Bkrtcy.D.Hawaii 1981) held that an attorney must reimburse the estate for fees already received when a conflict of interest existed.

Based upon the many factors in this case which prove that the firm had a conflict of interest and was an interested party, the Niesar firm's application for interim compensation is denied. The firm is also ordered to refund the prior retainer paid of $16,463.21 to the debtor.

This Memorandum Opinion and Decision shall constitute findings of fact and conclusions of law. Counsel for the Creditors Committee are requested to prepare and submit an order consistent with this opinion.