**In the Matter of Ronald F. PATTERSON, Carol J. Patterson, Debtors.**

**Bankruptcy No. BK84–251.**

United States Bankruptcy Court, D. Nebraska.

Sept. 30, 1985.

Thomas Lauritsen, Thomas Stalnaker and James Gleason, Swarr, May, Smith & Andersen, P.C., Omaha, NE, for applicant.

Michael Patrick, Gibson & Patrick, Lincoln, NE, for debtors-in-possession.

## MEMORANDUM OPINION

TIMOTHY J. MAHONEY, Bankruptcy Judge.

This matter comes before the Court on application for allowance of compensation and disbursements as attorneys for debtors-in-possession filed by the firm of Swarr, May, Smith & Andersen, P.C., and objections to such application raised by the debtors-in-possession. The matter was heard before Timothy J. Mahoney on July 2, 1985. Appearing for the applicant were Thomas Lauritson, Thomas Stalnaker and James Gleason, attorneys with the firm of Swarr, May, Smith & Andersen, P.C., of Omaha, Nebraska. Appearing on behalf of the debtors-in-possession was Michael Patrick of the firm of Gibson and Patrick, Lincoln, Nebraska.

## FACTS

The Pattersons filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 9, 1984; schedules were filed on February 24, 1984.

Mr. and Mrs. Patterson were engaged in the farming, commercial and purebred cattle raising and land development business in Sarpy County, Nebraska. For some time prior to filing for relief they had been represented by the law firm of Swarr, May, Smith & Andersen, P.C. The firm had handled many transactions and some litigation for the Pattersons and on the date of the petition the Pattersons were indebted to the firm in the amount of $8,015.26 as shown as Item 20 on Schedule A–3, "creditors having unsecured claims without priority". The total unsecured claims listed on the schedules amount to $111,766.66. The schedules further show that the amount of secured debts on the date of filing was $1,033,898.17.

Schedule B, "the statement of all property of the debtor" shows on entry no. 6 that the debtors have a one-half interest in the 80 acres located in Sarpy County, Nebraska, which they value at $75,000. The Bank of Papillion apparently held a mortgage on all or part of the 80 acres.

On the statement for financial affairs of debtor engaged in business at entry no. 20 "payments or transfers to attorneys" the debtors list that they have consulted during the year immediately preceding the filing of the petition James T. Gleason and Thomas D. Stalnaker of the law firm of Swarr, May, Smith & Andersen, P.C.

On February 9, 1984, in addition to signing the voluntary petition, Thomas Stalnaker and the debtors filed the list of creditors holding the 20 largest unsecured claims, which did not include the claim of the law firm, filed an application to employ attorneys and Mr. Stalnaker filed an affidavit by proposed attorney as required by the Bankruptcy Rule 2014.

The affidavit filed by Mr. Stalnaker stated at Paragraph 3 "Neither I nor any member of my law firm have any connection with Ronald F. Patterson and Carol J. Patterson, the above-named debtors, their creditors or any other party in interest herein, or their respective attorneys except that I represent said debtors in this proceeding and members of my law firm have

represented them in various matters for the past ten years and except that my law firm generally represents Gurthal Noell, a creditor herein, in the amount of $2,475. Neither I nor any member of my law firm have represented said creditor in any manner in connection with the debtors ...

"Neither I nor any member of my law firm represent any interests adverse to Ronald F. Patterson and Carol J. Patterson as the debtors-in-possession herein, or their estate in the matters upon which I am engaged."

No mention is made in the affidavit or in the application that the proposed law firm was owed more than $8,000 for pre-petition, non-bankruptcy related work.

No mention is made in the affidavit that James Gleason, a member of the law firm, owns an undivided one-half interest in the 80 acres listed above.

On March 6, 1984, Bankruptcy Judge David Crawford entered an order approving the appointment of Mr. Stalnaker as attorney for the debtors-in-possession. The order specifically states that no determination is made that the attorneys represent no adverse interest.

Members of Mr. Stalnaker's law firm represented the debtors-in-possession from approximately February 1, 1984, through January 25, 1985, at the time an order was entered permitting the firm to withdraw its representation.

Following the withdrawal of the law firm it filed a proof of claim on February 5, 1985, in the amount of $8,015.26 for legal services rendered to debtors and expenses incurred on behalf of debtors prior to the filing of the petition for relief in this matter. On March 20, 1985, the law firm filed this application for fees and disbursements for legal services rendered as counsel to debtors-in-possession.

The debtors, although not filing a written objection to the fee application, argued at the hearing that the fees should not be allowed for the following reasons:

1. the work was not competently performed and was of no benefit to the estate or the debtors-in-possession;

2. that the co-ownership interest by a member of the law firm in a parcel of debtors' land was an interest adverse to that of the estate or the debtors-in-possession;

3. that the fact that the law firm was a pre-petition creditor made the law firm not "disinterested" and therefore not qualified to be employed as a professional for the debtors-in-possession;

4. that a $450 payment shown as a disbursement by the law firm was actually a personal expense of Mr. Gleason for a survey prepared concerning the 80 acres owned by Mr. Gleason and the debtors-in-possession and should not have been charged to the debtors or, if it was a pre-petition obligation of the debtors, it should not have been paid because such payment permitted a pre-petition unsecured creditor to be paid before the other unsecured creditors;

5. the fee agreement between the law firm and the debtors-in-possession was for an hourly rate of $100 per hour with a maximum fee of $10,000. Since the fee requested is in excess of $10,000, the debtors believe it is in violation of the fee agreement.

The Pattersons had retained the services of Mr. Gleason for several years as their personal and business attorney. They were also apparently personal friends of Mr. Gleason and testified that they trusted his judgment and his legal abilities. They had employed him and members of the law firm of which he was a member to handle various types of litigation for them and to handle real estate transactions.

When it became apparent to the Pattersons that they had a serious financial problem which involved the amount of debt they owed to one bank, they sought the advice of Mr. Gleason. He represented to them that he was not an expert in the bankruptcy or reorganization field and that

he felt that Mr. Stalnaker of his firm would be able to help them.

The Pattersons met with Mr. Stalnaker and discussed their financial situation and discussed the proposed fee arrangement. Mr. Stalnaker and Mr. Gleason testified that the fee arrangement was that the debtors would pay, subject to the approval of the Bankruptcy Court, an hourly rate of $100 per hour plus all out-of-pocket expenses. No maximum was agreed upon.

Mr. and Mrs. Patterson, on the other hand, testified that $100 per hour was understood but that they believed a maximum of $10,000 was also agreed upon.

The parties did not enter into a written fee arrangement and no correspondence concerning the fee arrangement was offered into evidence.

Mr. Stalnaker testified concerning the type and extent of the work performed for the Pattersons and testified as to his experience and the experience of the various members of his firm who performed legal services on behalf of the Pattersons. Mr. Stalnaker is an experienced practitioner in the Bankruptcy Court of the District of Nebraska and is familiar with the statutes, rules and local procedure concerned with business reorganizations within the bankruptcy context. Prior to filing the petition for relief and continuing for several months thereafter, Mr. Stalnaker entered into oral and written negotiations with the attorney for the Patterson's lending bank. The position of the bank was that the Pattersons had no authority to use "cash collateral" without the consent of the bank. The bank insisted that the debtors-in-possession provide the bank with regular operating statements and account for the collateral, including livestock.

Mr. Stalnaker wrote to the Pattersons and informed them that they had the right to operate their business but that they could not use cash collateral without consent of the bank and warned the Pattersons that use of such cash collateral without permission of the bank or the Bankruptcy Court could result in severe penalties.

The Pattersons continued to operate their livestock business during the pendency of the Chapter 11 case. They fed grain to the animals and sold some livestock. They used some of the proceeds from the sale of livestock for operating expenses of the business and personal expenses.

Eventually there was a hearing on a motion for relief from the automatic stay under § 362 of the Bankruptcy Code. At that hearing Mr. Gleason represented the debtors-in-possession. Judge Crawford found that the debtors-in-possession had used cash collateral in violation of the Bankruptcy Code and sustained the motion for relief from the stay for cause.

From that moment on the relationship between the debtors-in-possession and the law firm deteriorated and the law firm was eventually permitted to withdraw from representation by an order filed in January of 1985.

Mr. Robert Craig, an attorney practicing exclusively in the bankruptcy field, and not associated with the Swarr, May, Smith & Andersen, P.C., law firm, testified on behalf of the application. He stated that he had reviewed the application and had heard the testimony of the witnesses concerning the fee arrangement, the nature and extent of the services provided and the time spent on such services. It was his opinion that the services as specified on the fee application were necessary and reasonable and that the cost of comparable services other than in a case under Title 11 would be similar.

The debtors presented evidence that the services were of no value to the estate or to the debtors-in-possession because they eventually lost on the motion for relief from the stay. They claim to be unfamiliar with the terms used in the bankruptcy system, including the term "cash collateral". The debtors-in-possession acknowledge that they had received correspondence from the law firm informing that they could not use cash collateral, but insisted that they did not understand what cash collateral meant. What they did understand was that they

had hundreds of head of livestock that had to be fed on a daily basis. How such feeding was to be accomplished without using grain was something they could not understand. They believed that there were problems within the law firm between the lawyers and they testified they had a very difficult time getting information from the law firm concerning what they were supposed to do as debtors-in-possession and what they were not supposed to do.

In summary, the evidence is most persuasive that the law firm is a pre-petition creditor for an amount in excess of $8,000; Mr. Gleason owns an undivided one-half interest in 80 acres of land, the other undivided one-half interest is owned by the debtors-in-possession; the fee agreement was $100 per hour plus out-of-pocket expenses with no specified maximum; the law firm did instruct the debtors not to use cash collateral without permission of the bank or permission of the Court; considering the size of the operation and the amount of debt, the law firm did provide reasonable services for a reasonable fee even though the debtors lost on the issues raised on the motion for relief from the automatic stay; the $450 expenditure for survey costs was for a pre-petition unsecured debt of the debtors and the law firm had no authority to pay it.

## DISCUSSION

The issues to be decided are:

1. Do either the co-ownership interest of Mr. Gleason with the debtors-in-possession or the law firm's pre-petition claim of approximately $8,000 make the lawyers non-disinterested persons under the Bankruptcy Code or Rules?

2. If the lawyers are not disinterested, must the Court deny all requested fees and expenses?

The relevant Code sections are §§ 327, 328, 329, 330 and 1107. The relevant rule is Bankruptcy Rule 2014. Section 327, entitled "Employment of Professional Persons" states, at sub-paragraph (a):

Except as otherwise provided in this section, the trustee, with the court's approv-

al, may employ one or more attorneys ..., that do not hold or represent an interest adverse to the estate, and that are disinterested persons, ...

Sub-paragraph (c) of § 327 was amended during the pendency of this matter, but since almost all of the legal services were performed prior to the effective date of the amendment, the preamendment language is effective in this case. The Court reviewed the amendment to sub-paragraph (c) and believes that such amendment does not affect the result in this case.

Section 327(c) states:

In a case under Chapter 11 of this Title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, but may not, while employed by the trustee, represent, in connection with the case, a creditor.

Section 328(c) states in part:

Except as provided in § 327(c), ..., the Court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under § 327 ... if, at any time during such professional person's employment under § 327 ..., such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

Section 330(a) provides:

After notice ... and a hearing, and subject to §§ 326, 328 and 329 of this Title, the court may award ... to a professional person employed under § 327 ...

(1) reasonable compensation for actual, necessary services rendered by such professional person or attorney, ... based on the time, the nature, the extent and the value of such services and the cost of comparable services other than in a case under this Title; and

(2) reimbursement for actual, necessary expenses.

Bankruptcy Rule 2014(a) provides in part:

That an order approving the employment of attorneys ... shall be made only on application of the trustee ... stating ... to the best of the applicant's knowledge, all of the person's connection with the debtor, creditors or any other party in interest, their respective attorneys and accountants.

"Disinterested person" is defined at § 101(13) as a person that

(A) is not a creditor ...;

.    .    .    .    .

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors ..., by reason of any direct or indirect relation to, connection with, or interest in, the debtor....

"Creditor" as defined in § 101(9) means (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor....

■ Section 1107 provides that a debtor-in-possession has all the powers, functions and duties of a trustee. Therefore, the debtor-in-possession has the power to employ an attorney who is disinterested and does not have an interest adverse to the estate or to the debtors-in-possession. *In the Matter of The Cropper Co.,* 35 B.R. 625, 11 B.C.D. 637, 639 (Bankr.M.D.Ga., 1983).

■ The debtor-in-possession has the power and the duty, if he finds it necessary to employ an attorney, to employ an attorney that does not represent an interest adverse to the estate and to employ an attorney that is a disinterested person. By definition under § 101(13) a person who is a creditor is not a disinterested person. There is nothing in the Bankruptcy Code and there is only one reported case that carve out an exception for an attorney who is a creditor. *In re Heatron, Inc.,* 5 B.R. 703 (Bankr.W.D.Mo.,1980). The applicant argues in its brief that since most debtors file Chapter 11 proceedings because of financial difficulties that lead to their inability to pay creditors, it is frequently the case that debtor's legal counsel can be found among those unpaid creditors. Therefore, the applicant states that it would be ludicrous and contrary to law to deny compensation to a law firm because it had a pre-petition claim against the debtors. The applicant cites § 1107(b) for the proposition that a person is not disqualified for employment under § 327 solely because of such person's employment by or representation of the debtor before the commencement of a case.

The applicant misunderstands the problem. The issue is not whether the applicant law firm is disqualified for employment solely because of its previous employment or representation by the debtor. The issue is whether or not the applicant is disqualified for employment because it is not a disinterested person as that term is defined in the Code or because it holds an interest which is adverse to that of the estate. *In re B.E.T. Genetics,* 35 B.R. 269, 11 B.C.D. 845 (Bankr.E.D.Calif., 1983).

Although it may be true that the general practice in this district and elsewhere in the United States is for a debtor which has a pre-filing debt owed to a law firm to employ that law firm to represent the debtor-in-possession, there is no evidence of that practice before this Court. Even if such evidence had been presented, this Court has the duty to read the plain words of the statute, review the legislative history if there is some question as to the meaning of the statute, read what the commentators have to say, if anything, about the language of the statute, and finally, consider what other courts who have had the opportunity to review the statute have decided concerning the meaning of the words.

This Court has done all of the above. Section 101(13) states that a disinterested person is not a creditor. Section 101(9) defines creditor as one that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor. The legislative history is not helpful, except that it does not indicate

attorneys were excluded from the meaning of the term "creditor".

The commentators are very clear on the question. *2 Collier on Bankruptcy*, § 327.03, 15th Ed., 1980, in the discussion of § 327(c), states, at footnote 36:

"If an attorney is a creditor of the debtor, the attorney is not eligible for employment by the trustee by virtue of §§ 101(13) and 327(a)."

*1 Norton, Bankruptcy Law and Practice* (1981) at § 13.26, Part 13, page 41, states:

"But that is not to say that § 1107(b) blesses the representation in all events of a debtor-in-possession by its pre-bankruptcy attorney. There may, and indeed frequently are, other disqualifying factors. For example, the attorney engaged by a debtor-in-possession must be 'disinterested'. Section 1107(b) does not excuse the attorney from compliance with the requirement that the attorney be a disinterested person. The only exception provided by § 1107(b) is disqualification arising from pre-bankruptcy employment. Thus, if the attorney is owed a lot of money by the debtor-in-possession, then the attorney's creditor status renders the attorney not a 'disinterested person' which, under the definition of Code § 1101(13), includes a creditor."

Other courts have had the opportunity to consider whether or not an attorney is disqualified from representing a debtor-in-possession because of the attorney's position as a creditor. The only case in which a lawyer for the debtor-in-possession who was also a major creditor of the debtor pre-petition was permitted by the court to continue the representation is *In re Heatron*, 5 B.R. 703 (Bankr.W.D.Mo.1980). In that case the court found that the potential conflict between the law firm and other creditors because of its status as a creditor was overridden by the importance of the knowledge that the law firm had of the debtor's business. After some analysis of the law and the definition of "disinterested person" the Court found that the unsecured creditor status of the law firm was not harmful or adverse to other creditors or to the debtor.

However, in two more recently decided cases, *In the Matter of The Cropper Company, Inc.*, 35 B.R. 625, 11 B.C.D. 637 (Bankr.M.D.Georgia, 1983) and *B.E.T. Genetics*, 35 B.R. 269, 11 B.C.D. 845 (E.D.Calif.1983), law firms were disqualified from representing the debtor-in-possession because associates or members of the firms were directors or shareholders of organizations that were creditors of the debtor.

This Court finds the analysis in the *Cropper* case and the *B.E.T. Genetics* case to be more persuasive than the analysis in the *Heatron* case. The statute is clear. It prohibits a creditor from being the attorney for the debtor-in-possession. Code § 327(c); § 101(13); § 101(9).

This Court is satisfied that a lawyer pre-petition creditor is not a disinterested person under the Code and, therefore, is disqualified to represent the debtor-in-possession.

■ There is another reason that the law firm is not to be considered "disinterested". Mr. Gleason, one of the members of the law firm, is a co-owner of real estate owned by the debtors. Code § 327(a) requires that the attorney for the debtor-in-possession be a disinterested person. Section 101(13) defines "disinterested person" not only as not being a creditor, but also as not being an insider. Section 101(13)(A). Former § 101(25), now § 101(28)A(iii) defines "insider" as a general partner of the debtor.

The evidence before the Court is that Mr. Gleason has some type of co-ownership interest in 80 acres of land with the debtors-in-possession. The evidence is not clear as to whether the ownership interest is operated as a partnership but it was Mr. Gleason's duty to define the relationship. However, there is no question that there is a co-ownership of the land. This is close enough to a partnership that for purposes of this case, it is deemed to be a partnership.

This Court finds that Mr. Gleason is not a disinterested person as that term is defined under the Code. He is an insider. He has an ownership interest in 80 acres of land with the debtors-in-possession. He appeared on their behalf at at least one hearing, that is, the hearing on the motion for relief from the automatic stay. His law firm was responsible for advising the debtors-in-possession concerning the appropriate plan of reorganization which would include the continuing ownership of or the disposal of the tract of land in which Mr. Gleason held an ownership interest. It is possible that the law firm would be required to advise the debtor-in-possession to keep or hold the land, to borrow against the land, to pay or not pay taxes and various maintenance expenses during the pendency of the case. Some, or all, of the decisions made by the debtors-in-possession concerning the land may be more favorable to the debtors-in-possession and the estate than they are to the co-owner. On the other hand, some of the decisions made by the law firm on behalf of the debtors-in-possession may be more favorable to the co-owner than to the debtors-in-possession or the estate. A good example of that problem is the payment of $450 for a survey. The $450 payment is included in one of the disbursements that the law firm has requested the Court authorize reimbursement out of the estate.

This survey expense was a $900 item. It was incurred pre-petition and concerned the 80 acres co-owned by the debtors-in-possession and Mr. Gleason. The evidence is that Mr. Gleason paid his one-half share of the survey and then the law firm, post-petition, paid the one half that was owed by the debtors. Testimony of the attorneys showed that they felt that since the law firm had requested the survey it had a duty to make certain that the survey invoice was paid and that the survey company did not have to wait until the plan was in effect and unsecured creditors were paid accordingly. It is obvious that this payment was made because the lawyers had ordered the survey and did not want to be embarrassed by having a bill outstanding that the sur-

vey firm could conclude was owed by Mr. Gleason, one of the co-owners of the land and one of the persons who benefited by the completion of the survey.

This Court finds that the co-ownership interest of Mr. Gleason is a conflict of interest. There is no evidence before the Court, other than the payment of the survey expense, that this conflict was harmful to the debtors-in-possession or to the estate in any manner. However, that finding is not helpful to the attorneys in this case. In *Woods v. City Bank Co.*, 312 U.S. 262 at 269, 61 S.Ct. 493, 496–497, 85 L.Ed. 820 (1941), Justice Douglas stated:

> "A fiduciary who represents security holders in a reorganization may not perfect his claim to compensation by insisting that, although he had conflicting interests, he served his several masters equally well or that his primary loyalty was not weakened by the pull of the secondary one. Only strict adherence to these equitable principles can keep the standard of conduct for fiduciaries 'at a level higher than that trodden by the crowd' ".

The law firm cannot represent itself and the debtors-in-possession because, by doing so, the law firm is not a "disinterested person" and there cannot help but be a potential conflict of interest.

■ The third reason that this Court believes the law firm is disqualified from representing the debtors-in-possession is the failure of the law firm to advise the Court of the creditor status and the co-ownership interest either in the application filed by the debtor or in the affidavit filed by the law firm pursuant to Rule 2014. Conflicts of interest must be disclosed to and ruled upon by the Court. *In Re B.E.T. Genetics*, 35 B.R. 269, 11 B.C.D. 845, 847 (Bankr.E.D.Calif.1983).

■ The debtor is the party objecting to the fees requested. This puts the debtor or debtor-in-possession in the position of one who has asked the Court to appoint the law firm, has benefited from the appointment of the law firm and the services pro-

vided by the law firm, has benefited by the cash advances made by the law firm, except for the payment to the surveying company, and, at all times knew that the law firm was a creditor of the debtor and that a member of the law firm was a co-owner of property with the debtor. Perhaps it seems unfair to permit the debtor with knowledge of the conflicts to use the services of the law firm and then bring it to the attention of the Court that the law firm should be disqualified and compensation should be denied. However, there is nothing in the Bankruptcy Code that permits the debtor to consent to the conflict. Bankruptcy Code § 327(a) does not permit a person who is not disinterested to represent the debtor-in-possession even if the debtor consents to such representation. It is the duty of the law firm, not the duty of the debtor, to know the bankruptcy law and to be cognizant of an occasion which presents an actual or potential conflict of interest. Further, it is the obligation of the Court, pursuant to § 330(a), after notice and hearing, to make a determination concerning the fee application, which determination includes a finding that the law firm is a disinterested person. Section 328(c).

■ If the Court had before it a case in which the law firm had previously represented the debtor and nothing more, there would be no violation of the Code. However, this Court has before it what it considers three specific violations of the Code and the Bankruptcy Rules. The fact that the debtor may benefit from the representation by the law firm and by the cash advances made by the law firm but not have to compensate the law firm for such representation, is a harsh result for the law firm. Nonetheless, when considering the duties of the attorney for the debtor-in-possession, the prohibitions contained in the Code concerning conflicts of interest, the actual knowledge by the lawyers of the creditor status, the co-ownership interest and the disclosure requirements, all of the compensation must be denied even if such a result benefits the debtor who was also aware of the creditor status and the co-ownership status.

The compensation requested by the attorneys for debtors-in-possession in the amount of $17,637.50 is denied pursuant to Bankruptcy Code § 328(c). The law firm also requested reimbursement for expenses in the amount of $1,283.81. Evidence was presented that an additional $72 was advanced for an appeal to the District Court. The amount paid for the survey $450, is denied. The balance, including the $72 for the appeal to the District Court, is approved. Therefore, the law firm shall receive $905.81 as reimbursement for expenses advanced.

Accordingly,

IT IS ORDERED that the request for compensation is denied completely.

IT IS FURTHER ORDERED that the applicant's request for payment of disbursements is approved in the amount of $905.81.