## In re KUYKENDAHL PLACE ASSOCIATES, LTD., Debtor.

**Bankruptcy No. 89–02580–H3–11.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Aug. 14, 1989.

---

P.J. Murphey Harmon, Crain, Caton & James, Houston, Tex., applied for by debtor.

Janet Douvas, Dotson, Babcock & Scofield, Houston, Tex., for Old Stone Bank.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

Came on for hearing on May 23, 1989 the Application for Order Authorizing Retention of Crain, Caton & James for Debtor-in–Possession. After considering the pleadings, evidence, memoranda, and arguments of counsel, the court makes the following findings of fact and conclusions of law and enters a separate Judgment in conjunction herewith. To the extent any findings of fact herein are construed to be conclusions of law, they are hereby adopted as such. To the extent any conclusions of law herein are construed to be findings of fact, they are hereby adopted as such.

## Findings of Fact

Kuykendahl Place Associates, Ltd., a limited partnership, ("KPA") filed its voluntary Chapter 11 petition on April 4, 1989, and subsequently filed its Application for Order Authorizing Retention of Crain, Caton & James for Debtor–in–Possession on April 6, 1989 in compliance with Bankruptcy Rule 2014(a). The Application was signed by David R. Murphy, the general partner of KPA. On April 7, 1989 the petitioning attorney, Murphy Harmon, of Crain, Caton & James filed a Statement of Crain, Caton & James and Disclosure Statement Pursuant to 11 U.S.C. § 329, and in compliance with the disclosure requirements of 11 U.S.C. § 329(a) and the verified statement requisite of Bankruptcy Rule 2014(a). (See Docket # 4.)

In the Application for Retention and the Statement of Crain, Caton & James, Mr. Harmon properly disclosed that the firm of Crain, Caton & James has from time to time represented the Debtor, and/or principals of the Debtor on past unrelated matters. Further, Mr. Harmon disclosed that the firm had from time to time represented Marc S. Geller, the general partner of the limited partner of the Debtor, in his individual capacity. Statement of Crain, Caton & James and Disclosure Statement Pursuant to 11 U.S.C. § 329 (See Docket # 4); Application for Order Authorizing Retention of Crain, Caton & James for Debtor–in–Possession. (See Docket # 3.) Thereafter, objections to the Application were filed by Old Stone Bank ("the Bank") and a hearing was held on May 23, 1989. The court took the matter under advisement.

The basis of the Bank's objection to the application to employ is that the firm of Crain, Caton & James had represented Marc S. Geller, an individual who is the general partner of Kuykendahl Place Associates, Ltd., a partnership, which partnership is the sole limited partner of the Debtor. Marc S. Geller also is one of two individual guarantors of an indebtedness owed to the Debtor. The Bank claims that this results in a conflict of interest which would preclude Crain, Caton & James from representing the Debtor in its Chapter 11 proceeding.

This court finds that the firm of Crain, Caton & James properly disclosed the previous representations in their Statement of Disinterest as required by § 329(a) and B.R. 2014(a). However, while the question on the facts herein is a close one, the court is of the opinion that the cumulative effect of the evidence submitted at the hearing results in an actual conflict of interest.

Mr. Harmon testified that he represents the interest of the Debtor and thereby the interests of the partners of the Debtor. Mr. Geller testified that Mr. Harmon has represented his partnership interests and himself individually in the past. Mr. Geller testified that, if the property of the Debtors were foreclosed on, the money invested by both partners would be lost. (Testimony of Murphy Harmon; Testimony of Marc S. Geller; Hearing held May 23, 1989.)

## Conclusions of Law

■ 11 U.S.C. § 327, § 328, and § 329 along with Bankruptcy Rules 2014 and 2016, set forth the Bankruptcy Code and Rules requirements for the employment of professionals. A debtor-in-possession, through the rights granted under 11 U.S.C. § 1107, may employ, with court approval, an attorney pursuant to § 327(a) and B.R. 2014 by filing an application with the court setting forth specific facts as to the proposed employment relationship. The attorney to be employed must not hold or represent an interest adverse to the estate and must be a disinterested person. 11 U.S.C. § 327(a). Bankruptcy Rule 2014 requires a verified statement to accompany the application setting forth the attorney's connections with the debtors, creditors, or any other party in interest, and their respective attorneys and accountants.

■ It is the duty of the attorney to reveal all connections. *In re Whitman*, 51 B.R. 502, 507 (Bankr.D.Mass.1985), citing *In re Coastal Equities, Inc.*, 39 B.R. 304, 308 (Bankr.S.D.Cal.1984). Full disclosure requires disclosure of any connection which may have a bearing on the attorney's or law firm's ability to represent the trustee

or debtor free of any conflict or adverse interest. *In re Roger J. Au & Son, Inc.,* 71 B.R. 238, 242 (Bankr.N.D.Ohio 1986) citing *In re Thompson,* 54 B.R. 311 (Bankr.N.D.Ohio 1985) aff'd 77 B.R. 113 (N.D.Ohio 1987) citing *In re Futuronics Corp.,* 655 F.2d 463, 469 (2nd Cir.1981) *cert. denied* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982). Crain, Caton & James properly disclosed all relevant connections with the Debtor and its principals and has complied with the demands of B.R. 2014.

11 U.S.C. § 327(a) establishes the following two-pronged test which the professional must meet to be employed by the trustee or debtor-in-possession:

(1) The professional may not hold or represent an interest adverse to the estate; and

(2) The professional must be a disinterested person.

*In re O'Connor,* 52 B.R. 892, 875 (Bankr. W.D.Okla.1985).

■ To hold an adverse interest is to: (1) possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) possess a predisposition under circumstances that render such a bias against the estate. *In re Glenn Electronic Sales Corp.,* 89 B.R. 410, 413 (Bankr.N.J.1988) aff'd 99 B.R. 596 (D.N.J.1988); *In re Star Broadcasting, Inc.,* 81 B.R. 835, 838 (Bankr.N.J.1988); *In re Roberts,* 46 B.R. 815, 827 (Bankr.Utah 1985) aff'd in relevant part, 75 B.R. 402 (Dist. Utah 1987). To represent an adverse interest means to serve as an agent or attorney for any individual or entity holding such adverse interest. The firm of Crain, Caton & James has represented Marc S. Geller individually. Mr. Geller is the general partner of Debtor's sole limited partner which is itself a limited partnership. Marc S. Geller has individually guaranteed an indebtedness of the Debtor–in–Possession. The guarantee, by its nature, establishes that Mr. Geller holds an interest which may be adverse to that of the Debtor–in–Possession.

11 U.S.C. § 101(13)(E) defines "disinterested person" as one who does not have a materially adverse interest to the estate by reason of any direct or indirect relationship to or connection with the debtor. The definition of a disinterested person promotes the policy that professionals should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate. *In re Philadelphia Athletic Club, Inc.,* 20 B.R. 328, 334 (E.D.Penn.1982) citing 1 Collier Bankruptcy Manual § 101.13 (1981). A limited partner, by definition, is an owner of an interest in the partnership. 11 U.S.C. § 101(43)(A)(xiii) defines that interest as a security in the limited partnership, which in this case is the Debtor.

■ Multiple representation of related entities causes serious concern for the loyalties of debtor's counsel. A law firm must exercise impartial and undivided loyalty to its client. *In re Kendavis Industries International, Inc.,* 91 B.R. 742 (Bankr.N.D.Tex.1988). An attorney is required, under Canon Five of the ABA Model and Texas Codes of Professional Responsibility, to exercise independant professional judgment free of compromising influences and loyalties on behalf of a client. A firm's acting in the best interest of the principals of a debtor during the time they were appointed by the court as attorneys for the debtor, raises serious issues of conflict of interest and benefit to the estate. *In re Kendavis Industries International, Inc.,* 91 B.R. 742, 751, citing *In re Coral Petroleum, Inc.,* No. 83–02460–H2–5, slip op. (Bankr.S.D.Tex. January 30, 1988), decision stated as moot on appeal as parties accepted prior decision. *In re Coral Petroleum, Inc.,* 88–1527, slip op. (S.D.Tex. July 7, 1988).

■ Where a firm represented a debtor and concurrently followed the recommendations of the debtor's principal in proceeding with its representation, the court found serious conflicts of interest. See *In re Kendavis Industries International, Inc.,* 91 B.R. 742, 751 (Bankr.N.D.Tex.1988). Mr. Harmon of Crain, Caton & James has stated that even if there were dual representation, the interests of the limited part-

ner and that partner's general partner are the same as, or are mutually beneficial to, the interests of KPA. However, the dual interests do not necessarily coincide. Where a corporation is the debtor, the attorney's duties and loyalties are to the corporation, not to individual employees, officers or directors of the corporation. *In re Hoffman*, 53 B.R. 564 (Bankr.W.D.Ark. 1985). This is analogous to the case at hand. The duty and loyalty of the attorney is to the debtor and not to the partners or individuals that control the partners of the Debtor.

Mr. Geller testified that he, through the limited partner of KPA, and the Debtor have monetary interests that would be lost upon foreclosure. (Testimony of Marc S. Geller; Hearing held May 23, 1989.) This dual loss evidences, not only the like interests of the Debtor and the limited partner of the Debtor in keeping the property out of foreclosure, but also the conflicting nature of the relationship if the property is foreclosed on. If the property is lost to foreclosure, it would be the fiduciary duty of the person in control of the limited partner to inquire into the circumstances surrounding the loss to recoup any money lost for the limited partner. The intricacies of the bankruptcy process are such that what is best for the debtor is distinct from, and may be opposite to, what is best for any partner or guarantor of the debtor. Cf. *In re Roberts*, 46 B.R. 815 (Bankr.Utah 1985) aff'd in relevant part 75 B.R. 402 (Dist. Utah 1987) (in denying attorneys' fees court lists thirty-four instances where an impermissible conflict of interest was found). *See also In re McKinney Ranch Assoc.*, 62 B.R. 249, 255 (Bankr.C.D.Cal. 1986).

■ Where there is dual representation, an actual conflict exists. *See In re Kendavis Industries International, Inc.*, 91 B.R. 742, 754 (Bankr.N.D.Tex.1988). Due to Mr. Geller's fiduciary responsibility to the limited partner and his personal guarantee of KPA's indebtedness, the representation of KPA will be adverse to the representation of Mr. Geller in any claim he has against the estate. The firm's duty of loyalty to KPA and/or to Mr. Geller results in a conflict of interest.

■ The ABA Model Rules of Professional Conduct, Rule 1.7(b) state that a lawyer shall not represent a client if that representation may be materially limited by responsibilities to another client, unless the lawyer reasonably believes the representation will not be adverse and the client consents. Any consent to representation by the parties involved in this case must be implied from the facts before this court and, necessarily will not be sufficient, by itself, to overcome a lack disinterestedness on the part of Crain, Caton & James. Prior representation of Mr. Geller's interests, as evidenced by the testimony before the court, creates the predisposition towards bias that was of concern in *Roberts*, 46 B.R. 815. "Even the most rigorous self-discipline might not prevent a lawyer from unconsciously using or manipulating a confidence (or loyalty) aquired in the earlier representation...." *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2nd Cir.1973). A lawyer should not continue multiple employment if the exercise of his independent professional judgment will be adversely affected by his representation of another client. Texas State Bar Rule 5–105(B). Further, a nondisinterested firm may not represent the debtor even though the debtor may have consented to such representation. *In re Patterson*, 53 B.R. 366 (Bankr.Neb.1985).

Given the particular facts and evidence presented in this case, there exists an actual conflict which precludes Crain, Caton & James from representing KPA. Thus, the Application for Order Authorizing Retention of Crain, Caton & James for Debtor-in-Possession is denied, and the law firm of Crain, Caton & James is to disgorge and release to the Debtor the net amount of $9,500.00, which consists of the initial $10,000.00 retainer paid by Debtor with a deduction of the filing fee of $500.00. A separate Judgment will be entered forthwith by the court pursuant to the court's findings of fact and conclusions of law.